780 P.2d 423

Alfred **CLEARWATER** and Annette **Clearwater**, husband and wife, as surviving parents of Alfred B. Clearwater, Plaintiffs/Appellees/Cross–Appellants,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, Defendant/Appellant/Cross–Appellee.

Nos. 2 CA–CV 89–0007, 2 CA–CV 89–0008.

Court of Appeals of Arizona, Division 2, Department B.

March 23, 1989.

Review Granted Sept. 19, 1989.

---

**3.** See *Bonasera v. Roffe,* 8 Ariz.App. 1, 442 P.2d 165 (1968).

Langerman, Begam, Lewis and Marks, P.A. by Thomas F. Dasse, Phoenix, for plaintiffs/appellees/cross-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Scott E. Boehm and Ralph E. Hunsaker, Phoenix, for defendant/appellant/cross-appellee.

## OPINION

LACAGNINA, Chief Judge.

This bad faith tort case involves the propriety of refusing to give a "fairly debatable" jury instruction in what is commonly referred to as a "third party claim" and whether the assignee of the insured's claim for bad faith can recover punitive damages from the insurer. Other issues raised by the appeal will be discussed in the body of the opinion.

For the reasons stated below we hold the trial court erroneously refused to instruct the jury on "fair debatability" in a third party bad faith action where it was supported by sufficient evidence. In addition, we hold that the assignment of the insured's claim for bad faith against its insurer includes a claim for punitive damages. We reverse the verdict and judgment for $75,000 in compensatory damages and the judgment for attorneys' fees, and remand for a new trial on all issues.

## FACTS AND PROCEDURAL HISTORY

On August 30, 1980, Edward Francis, a State Farm insured, was involved in an auto-motorcycle accident in which Alfred Clearwater, the driver of the motorcycle, was killed. In an action brought by Alfred and Annette Clearwater, the decedent's parents, the jury returned a verdict against Francis for $125,000. Francis had liability insurance with State Farm for $50,000. An investigation by State Farm after the accident disclosed the following. Francis maintained he was not at fault and was in the left turn lane travelling 5–10 miles per hour for 10–15 seconds with his left turn signal on preparing to turn left when he was struck from behind by Clearwater's motorcycle. The police report indicated Francis was in the left through lane at the time of impact and that Clearwater was exceeding the speed limit by 2–10 miles per hour when the accident occurred. The investigating police officer stated that there was no obstruction to Clearwater's vision at the time of the accident. One witness stated that Francis was not using his left turn signal as he slowed down almost to a "dead stop" in the left through lane. He also stated that he did not believe Clearwater was speeding.

State Farm's claim adjuster concluded in early November that the case had a potential for "large exposure" based on his conclusion that Francis was negligent for operating his vehicle so slowly that it impeded traffic, citing A.R.S. § 28–704(A). The adjuster and his supervisor testified they agreed that the jury verdict could be one million dollars. On November 5, 1981, Clearwaters' attorney sent a letter demanding a $40,000 settlement. On November 13, State Farm rejected this and offered $5,000. In the previous several months State Farm had obtained an opinion from an Arizona lawyer that it had a 60–70% chance of defense verdict. Early in 1982,

Clearwaters' attorney sent State Farm a report of an accident reconstruction expert placing sole responsibility for the accident on Francis because he encroached into Clearwater's lane of traffic, and all Clearwater could do was apply his brakes. State Farm did not increase its offer. It also did not inform Francis of the offer because of its policy not to do so regarding offers of less than the policy limits.

Clearwater served Francis with a complaint on May 6, 1982, and State Farm hired Edwin G. Noyes, Jr. to represent it. Noyes reviewed State Farm's investigation file and advised State Farm in writing that the case was defensible and had a settlement value of $5,000, although he reserved full evaluation until after discovery. The file included a June 1982 review of the case by a new adjuster who concluded that the settlement value of the case was $5,000.

During discovery procedures while the case was pending, Noyes advised State Farm that the officer's speed calculations would not withstand cross-examination because of his lack of experience as an accident reconstructionist and because Clearwaters' accident expert would testify that the cause of the accident was an unsafe lane change or merging by Francis. In December 1982, Clearwaters offered to settle with State Farm for the policy limits of $50,000. The offer was rejected. Clearwaters later offered to settle for $30,000. On April 19, 1983, State Farm rejected the offer and reasserted its $5,000 offer. At no time did State Farm discuss the offers for settlement with its attorney, Noyes, or its insured, Francis, because its policy and practice is to make its own decisions regarding settlement value without requesting opinions from attorneys employed to defend its insureds.

On June 10, 1983, the jury rendered a verdict in favor of Clearwaters in the amount of $125,000. When Clearwaters began collection efforts for the $75,000 excess judgment from Francis, he assigned his claims against State Farm in exchange for a covenant not to execute. On May 3, 1984, Clearwaters, as assignees, sued State Farm for bad faith, and after trial received a jury verdict for $75,000 with judgment in that amount, plus attorneys' fees awarded by the court.

During the trial, the court had ruled that an insured's claim against its insurer for punitive damages was nonassignable as a matter of law and dismissed Clearwaters' claim for punitive damages. At the close of the evidence, State Farm requested the court to instruct the jury that an insurer may challenge claims which are "fairly debatable." The trial court refused the instruction, believing that standard was applicable only to first party claims, and only instructed on the "equal considerations" standard it believed applicable to third party claims. Other facts pertaining to the evidentiary issues raised on appeal will be discussed below.

## "FAIRLY DEBATABLE" TEST MAY APPLY TO THIRD PARTY CLAIMS

■ The claim for bad faith was based on State Farm's refusal to settle within policy limits and its failure to inform its insured of settlement offers. State Farm argues that the trial court should have prohibited evidence on the second reason because the complaint only charged bad faith failure to settle. The complaint generally alleging bad faith was sufficient notice of the claim, and the specific facts supporting the claim should have been and were learned by State Farm through pretrial discovery. In determining whether an insurance company has acted in good faith, giving equal consideration to the interests of its insured prior to refusing a settlement within policy limits, one of the factors to consider is the failure to inform the insured of compromise offers, and evidence of that conduct is admissible, *Farmers Ins. Exchange v. Henderson*, 82 Ariz. 335, 313 P.2d 404 (1957), even though not specifically alleged in the complaint.

The trial court's refusal to give State Farm's offered instruction that it could challenge a claim that was fairly debatable was based on Clearwaters' argument that the fairly debatable test does not apply to third party claims. The trial court incorrectly refused this instruction based on

that argument. There is no legal distinction between the duty of good faith owed by an insurance company when dealing with first party claims or third party claims. There is one overall duty of good faith, and bad faith is always a question of reasonableness under the circumstances. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986); *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981); *Trus Joist Corp. v. Safeco Ins. Corp. of America*, 153 Ariz. 95, 735 P.2d 125 (App.1986); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 510 P.2d 1032 (1973). The tort of bad faith is quasi-intentional and requires proof not only that the insurer acted unreasonably toward its insured but also that it acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed.[1] *Rawlings v. Apodaca, supra; Brown v. Superior Court*, 137 Ariz. 327, 670 P.2d 725 (1983); *Trus Joist Corp. v. Safeco, supra.*

The trial court instructed the jury, in determining whether the insurer breached its duty of good faith to give equal consideration to its insured's interest in rejecting offers of settlement, to consider the following factors.

1. The amount of financial risk to which each party is exposed in the event [of] a refusal to settle.

2. The strength of the injured claimants' case on the issues of liability and damages.

3. The failure of the insurance company to inform the insured of offers of settlement.

4. The failure of the insurance company to properly investigate circumstances so as to ascertain the evidence against the insured.

When considering the second factor, the jury was without the benefit of an instruction on fair debatability on the issues of liability and damages as they appeared when State Farm refused the offers of settlement. If Francis had paid the judgment and sued State Farm for the excess over his policy limits for bad faith refusal to settle, no one would quarrel that State Farm was entitled to raise as a defense the lack of bad faith because the issues of liability and damages were debatable. State Farm does not lose that right because Francis assigned his claim to his judgment creditor in return for a covenant not to execute. Clearwaters could not sue State Farm for failing to settle within policy limits without the assignment from Francis. It is Francis's claim that is being litigated in this bad faith case, and the assignment does nothing to change or alter the elements of the tort of bad faith. As stated earlier, Arizona cases do not distinguish the duty owed by an insurer in first or third party claims or the applicable standard of conduct required, and the test is reasonableness under the circumstances. The presence of disputed evidence is sufficient to support a fairly debatable issue in both a first or third party action. Therefore, we reverse the trial court's refusal to give that instruction in this case because the evidence was sufficient to raise a jury question.

## BAD FAITH CLAIM FOR PUNITIVE DAMAGES ASSIGNABLE

During trial, the court dismissed Clearwaters' claim for punitive damages on the ground that under Arizona law a claim for punitive damages could not be assigned. We disagree. The assignment from Francis transferred his entire claim for bad faith against State Farm to Clearwaters. *Quiroga v. Allstate Ins. Co.*, 151 Ariz. 127, 726 P.2d 224 (App.1986). State Farm argues that Francis's claim for bad faith is a personal tort not assignable in Arizona. Arizona law recognizes an exception to this rule and permits an assignment of an insured's cause of action for bad faith failure to settle. *General Accident Fire & Life Assurance Corp. v. Little*, 103 Ariz. 435 n. 2, 443 P.2d 690 n. 2 (1968). The insured's cause of action for bad faith failure to settle is founded on a breach of

---

1. The trial court did not give an instruction on reasonableness mandated by *Noble v. National American Life Ins. Co., supra,* but State Farm failed to assign error on any of the instructions refused by the trial court except the one on fair debatability.

contract and tort; therefore, cases prohibiting the assignment of causes of action for purely personal torts are inapplicable.[2]

◼ We must now address the question of what effect the assignment has on the issues of damages when an insured assigns his claim for bad faith failure to settle to a third party. The insured gives up all of his claims arising from the bad faith failure to settle because the cause of action for bad faith cannot be split, and the assignee is the only person who can assert the claim. The third party's claim is in reality the insured's claim, but the third party cannot recover damages personally suffered by the insured such as pain and suffering, embarrassment, mental anguish and humiliation. The assignee can only recover the insured's pecuniary losses. If the pecuniary damages (the excess judgment) are the result of conduct entitling a party to punitive damages, we find nothing in the law or public policy prohibiting a third party from asserting that claim. *Oppel v. Empire Mutual Ins. Co.*, 517 F.Supp. 1305, 1307 (S.D.N.Y.1981).

One of the major factors supporting the claim for tort damages in bad faith cases is that of deterrence. It was best explained by the supreme court in *Rawlings v. Apodaca:*

> The final important factor which we extract from the cases is that of deterrence. In contractual relationships in which one party primarily has sought protection or security rather than profit or advantage, contract damages not only fail to provide adequate compensation but also fail to provide a substantial deterrence against breach by the party who derives a commercial benefit from the relationship.
>
> In the first place, they offer no motivation whatsoever for the insurer *not* to breach. If the only damages an insurer will have to pay upon a judgment of breach are the amounts that it would

have owed under the policy plus interest, it has every interest in retaining the money, earning the higher rates of interest on the outside market, and hoping eventually to force the insured into a settlement for less than the policy amount.

*Wallis v. Superior Court*, 160 Cal. App.3d [1109] at 1117, 207 Cal.Rptr. [123] at 128 [ (1984) ] (emphasis in original). Thus, we conclude that one of the prime reasons for the recognition of tort actions for breach of the implied obligations raised by certain contractual relationships is that any other rule provides more of an incentive for breach of the contract than for its performance. Certainly, this is often the situation in insurance contracts and, we believe, makes tort remedies appropriate for some types of breach of the duties implied by law in the contractual relationship.

151 Ariz. at 159–160, 726 P.2d at 575–576 (emphasis in opinion; footnote omitted). *See also Gurule v. Illinois Mutual Life and Casualty Co.*, 152 Ariz. 600, 734 P.2d 85 (1987). In short, the effect of the assignment is to relieve the insurance company of the liability for damages of a personal nature suffered by its insured, but still make it responsible for the pecuniary and punitive damages caused by its wrongful conduct.

State Farm cites *Murphy v. Allstate Ins. Co.*, 132 Cal.Rptr. 424, 553 P.2d 584 (1976), for the proposition that claims for punitive damages are not assignable. We reject the reasoning of *Murphy* that a claim for punitive damages is a "purely personal tort" and therefore nonassignable. This statement was made by the California court in a case where there was *no assignment* from the insured, and a third party creditor proceeded directly against the insurer claiming the right to do so pursuant to California statutes. In addition, the authority cited in

---

**2.** *See K.W. Dart Truck Co. v. Noble*, 116 Ariz. 9, 567 P.2d 325 (1977); *Schroeder v. Hudgins*, 142 Ariz. 395, 690 P.2d 114 (App.1984).

*Murphy* for that statement involved assignment of claims for fraud, fraudulent misrepresentation and the imposition by the attorney general of punitive damages as a penalty without benefit of a statute. In addition, in this opinion we have already agreed with the court in *Murphy* that damages of a personal nature do not follow the assignment of a bad faith tort claim, but disagree that a claim for punitive damages in the context of a bad faith failure to settle is "purely personal." Upon retrial, the trial court may decide, based upon the presentation of all the evidence, whether it supports a claim for punitive damages.

## TRIAL COURT'S EVIDENTIARY RULINGS

State Farm argues the trial court should have prevented an attorney from giving an expert opinion that State Farm's conduct constituted bad faith. The attorney had many years of insurance defense experience, but State Farm argues he had no knowledge of its procedures and practices; therefore, he was incompetent to testify whether the practices were improper. We disagree. The attorney-witness formed his opinion from the same information relied upon by State Farm's witness to support a contrary opinion. The admission or rejection of expert testimony is left to the discretion of the trial court and we find no abuse. *Bliss v. Treece*, 134 Ariz. 516, 658 P.2d 169 (1983). Expert testimony has been allowed in bad faith cases. *See Clark v. Interstate National Corp.*, 486 F.Supp. 145 (E.D.Pa.1980); *Neal v. Farmers Ins. Exchange*, 148 Cal.Rptr. 389, 582 P.2d 980 (1978); *Groce v. Fidelity General Ins. Co.*, 448 P.2d 554 (Or.1968). As stated in *Groce:*

> The fact that the jury did not necessarily need the expert testimony did not render the testimony inadmissible. The testimony was at least useful, if not indispensable. It can hardly be said that the average juror was as well equipped as an experienced insurance defense attorney to judge the good or bad faith of an

insurer, based upon the facts included within the hypothetical question.

448 P.2d at 560.

As to the remaining evidentiary issues, we need not consider them in light of our decision granting the parties a new trial.

Reversed.

ROLL, P.J., and FERNANDEZ, J., concur.