INS INVESTIGATIONS BUREAU, INC., Vernon Large and Richard Murphy, Appellants–Defendants,

v.

Lester L. LEE, William R. Lee, Cubeco, Inc., and Lees Inns of America, Inc., as Assignees of the Rights of the Home Indemnity Company, Appellees–Plaintiffs.

No. 40A01–9807–CV–268.

Court of Appeals of Indiana.

April 21, 1999.

James W. Riley, Jr., Mary K. Reeder, Michael Patrick Dugan, Riley Bennett & Egloff, Indianapolis, Indiana, Attorneys for Appellants.

Corinne R. Finnerty, McConnell & Finnerty, North Vernon, Indiana, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge

This is an interlocutory appeal from the denial of summary judgment requested by INS Investigations Bureau, Inc. (INS), Vernon Large, and Richard Murphy in an action filed by Lester L. Lee, William R. Lee, Cubeco, Inc. and Lees Inns of America, Inc. (Lees), as assignees of the rights of Home Indemnity Company. INS presents three issues for review:

1. Could Home Indemnity validly assign its cause of action against INS to its adversary in the underlying proceeding or should such an assignment be void as against public policy?

2. Should the cause of action, if assignable, be properly characterized as a negligence action requiring a two-year statute of limitations?

3. Should the trial court strike certain designated evidentiary matter submitted by the Lees as improper and inadmissible?

We affirm.

The facts disclose that in January 1992, a structure owned by the Lees was damaged by fire. Home Indemnity insured the building. The Lees maintained other policies of insurance with Home Indemnity as well. Home Indemnity's employee, Richard Clasen, met with the Lees on the day after the fire. Clasen concluded that the fire was suspicious and determined that further investigation was warranted.

Clasen contacted INS and requested that INS perform an investigation. Clasen engaged INS's services through a telephone conversation. Home Indemnity and INS did not execute a written contract. INS was to report to Home Indemnity's attorney.

Initially, INS was instructed to investigate the cause of the fire. Home Indemnity then expanded the request to include a "full investigation" with background information on the insureds.

INS employees started the investigation at the fire scene two days after the fire. Approximately one week later, Vernon Large, a chief investigator for INS, went to the scene. He reviewed the INS investigative work, conducted his own examination, and took additional photographs and samples. Based upon the investigation, Large concluded that the fire was intentionally set. The last INS report was forwarded to Home Indemnity's attorney on October 6, 1992.

Home Indemnity pursued an independent investigation of the Lees's financial condition as a possible motive for arson. Home Indemnity hired an accounting firm. The accounting firm concluded that the insureds were under severe financial stress, that the building was on unproductive property with lease payments of $180,000 per year, and that the insureds had a substantial investment in an inventory of materials that depreciated in value.

Home Indemnity's attorney, together with four adjusters for Home Indemnity, including Clasen, determined that the Lees's claim should be denied. The adjusters did not claim any particular expertise in fire investigation. They based their decision upon discussions regarding the various reports. In a November 1992 letter, Clasen informed the Lees that Home Indemnity denied the fire loss claim on the grounds that the fire was attributable to an intentional act by someone in authority and responsible for the insureds, that false or misleading information was provided by representatives of the insureds, and that the insureds refused to 1) provide material information regarding financial records of affiliates, and 2) allow contact with a lender-investor in the business.

Shortly after the denial, the Lees filed suit against Home Indemnity. The lawsuit was removed to federal court in February 1993. The federal court action was settled in January 1995. Home Indemnity paid $3.5 million to the Lees to settle the breach of contract and bad faith claims. As part of the settlement, Home Indemnity assigned to the Lees any claims it may have against INS.

In July 1995, the Lees filed this action against INS. The complaint, in three counts, alleged in pertinent part:

### COUNT I

Come now the Lees, as assignees of the Home Indemnity Company, and for their cause of action against INS, allege and say as follows:

\* \* \*

2. That the Home Indemnity Company employed INS to conduct a cause and origin investigation of the subject fire, a background check of the Lees and, further, to serve as technical advisors and experts in connection with the denial of the Lees' claims under their insurance policy and later in preparation for litigation and trial on the issue of insurance coverage.

3. That INS holds itself out as an international professional investigative company which provides a broad array of professional services to the insurance industry and those affiliated with it.

4. That implicit in the contract between the Home Indemnity Company and INS pertaining to the investigation of the Lees' fire was a duty to perform the work agreed to be done skillfully, carefully, diligently, and in a workmanlike manner.

5. That also implicit in the contract between the Home Indemnity Company and INS concerning the investigation of the Lees' fire was the requirement that INS possess and make use of that degree of skill, efficiency, and knowledge which is possessed by those of ordinary skill, competency, and standing in the fire investigation and insurance investigation trade.

6. That INS assigned Large and Murphy to carry out the primary duties related to the services requested by the Home Indemnity Company in connection with the investigation of the Lees' fire.

7. That INS breached its contract with the Home Indemnity Company in that it completely failed to perform its obligations to the Home Indemnity Company in a skillful, careful, diligent and workmanlike manner resulting in substantial losses and damages to the Home Indemnity Company.

8. That those employees assigned by INS to the investigation of the cause and origin of the Lees' fire and subsequent services undertaken to be performed for the benefit of the Home Indemnity Company lacked the degree of skill, efficiency, and knowledge which is possessed by those of ordinary skill, competency and standing in the fire investigation profession or trade.

* * *

10. That as a result of INS's breach of its contract with the Home Indemnity Company, the Home Indemnity Company initially denied the Lees' fire claim under its insurance policy resulting in litigation and a subsequent settlement greatly in excess of the Lees' insurance policy limits.

11. That the Home Indemnity Company expended significant sums for investigative services, legal expenses and costs, and in the settlement of the Lees' claims as a result of the breaches of the contract entered into between the Home Indemnity Company and INS.

### COUNT II

Come now the Lees, and for their cause of action against the defendants, INS, Large, and Murphy, allege and say as follows:

* * *

15. That at all times pertinent to this litigation, Vernon Large and Richard Murphy were employees of INS acting within the course and scope of their employment in connection with all of their actions pertaining to the investigation of the Lees' fire.

16. That Vernon Large, Richard Murphy, and INS owed a duty to the Home Indemnity Company to perform their services pertaining to the investigation of the Lees' fire, and related services, in a skillful, careful, diligent, and workmanlike manner.

17. That Large, Murphy, and INS breached their duty of care to the Home Indemnity Company and committed many negligent acts in connection with the services they performed for or on behalf of the Home Indemnity Company in connection with the Lees' fire claims.

18. That as a proximate cause of the negligence of Vernon Large, Richard Murphy, and INS, the Home Indemnity Company suffered significant damages due to their erroneous denial of the Lees' fire claim, and the subsequent litigation arising therefrom.

19. That Vernon Large, Richard Murphy and INS negligently supplied false, inaccurate, and misleading information to the Home Indemnity Company and its representatives, concerning their background investigation of the Lees, their investigation of the cause and origin of the Lees' fire, and related matters pertaining to the subsequent litigation between the Home Indemnity Company and the Lees, all of which proximately resulted in substantial damages to the Home Indemnity Company.

* * *

### COUNT III

* * *

20. That Vernon Large, Richard Murphy, and INS, committed the following conduct,

tortious in nature, which gives rise to a claim for punitive damages herein:

a. knowingly misrepresented the source and presence of petroleum products on the floor of the industrial facility owned by the Lees with the intent to create the false impression that arson was the cause of the subject fire.

b. made false statements of fact in connection with their purported investigation of the Lees' fire losses.

c. made false statement of fact to a purported technical expert concerning the electric furnace which caused the subject fire.

d. knowingly and intentionally disregarded accepted scientific facts while fabricating evidence to support the denial of the Lees' claim.

e. knowingly and intentionally suppressing exculpatory evidence concerning the subject fire which would have revealed its source as accidental rather than intentionally set.

f. violating the duty of good faith which each and every insurance company and its agents and employees owe to an insured in the investigation of a first party claim.

21. That the defendants' actions were wrongful, tortious in nature, committed in bad faith, and committed with malice and/or reckless disregard for the facts and consequences of their acts.

22. That INS, Murphy, and Large acted fraudulently, oppressively, maliciously, and outrageously towards the Lees with conscious disregard for their known rights as well as towards the Home Indemnity Company with conscious disregard for its known rights.

23. That INS, Large, and Murphy have knowingly caused and/or willfully disregarded the probability of large additional compensable losses to the Home Indemnity Company as a result of their acts.

WHEREFORE, the Lees, as assignees of the rights of the Home Indemnity Company herein, pray for a judgment against INS, Large, and Murphy, in an amount sufficient to compensate it for its injuries and losses, for prejudgment interest on all ascertainable sums due and owing, for punitive damages, for costs of this action, and for all other proper relief.

*Record* at 15–21.

When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, *i.e.*, summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Primerica Life Ins. Co. v. Skinner*, 678 N.E.2d 1140 (Ind.Ct.App.1997). This court may not examine the entire record to support a judgment, but may consider only that evidence which was specifically designated to the trial court. *Id.* A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. *Id.* When material facts are not in dispute, the concern is the application of the law to the facts. *Gallatin Group v. Central Life Assur. Co.*, 650 N.E.2d 70 (Ind.Ct.App.1995).

1.

INS contends that any potential claim which Home Indemnity may have had is not assignable to the Lees. INS seeks to bring itself under the rule applied in *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338 (Ind.1991), wherein it was determined that attorney malpractice claims are not assignable to an adversary from the underlying litigation. The court relied upon dual concerns, both of public policy dimensions: 1) assignment would be antithetical to the client-lawyer relationship especially with regard to zealous representation of a client and the confidentiality owed to a client, and 2) assignment to an adversary under the circumstances of the case would require the assignee to take a position contrary to that espoused at the trial of the underlying cause, thereby undermining the integrity of our system of jurisprudence. The court in *Picadilly* thoroughly reviewed the genesis of assignability. After examining various historical bases for allowing or not allowing assignability, the court concluded that public policy is an integral part of an examination of assignability. *Id.* at 341.

The public policy analysis in *Picadilly* is tailored to the client-lawyer relationship. Because many of the public policy concerns identified in *Picadilly* have application specifically to an attorney malpractice case, it is appropriate to review general assignability precepts.

 A right to damages for breach of a contract is assignable. *Rasp v. Hidden Valley Lake, Inc.*, 519 N.E.2d 153 (Ind.Ct.App. 1988). Generally, personal service contracts are not assignable. *SDL Enterprises, Inc. v. DeReamer*, 683 N.E.2d 1347 (Ind.Ct.App. 1997). "[T]orts for personal injuries and for wrongs done to the person, reputation, or feelings of the injured party remain unassignable." *Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 485 (Ind.Ct.App.1998) (citing *Picadilly*, 582 N.E.2d at 340), *trans. denied,* 706 N.E.2d 181 (Ind.1998). Yet, "the types of torts which may not be assigned have become so narrow that nonassignability of tort actions is now the exception while assignability is the general rule." *Id.*

The breach of contract claim and tort components for negligent performance of the contract to investigate the fire all arise from a business relationship and appear facially assignable under general principles. INS requests a public policy analysis similar to that in *Picadilly.*

Although INS characterizes its relationship with Home Indemnity as "confidential", it is clearly not of the type of confidentiality inherent in and demanded by the client-lawyer relationship as discussed in *Picadilly.* While reports were stamped "confidential", the practical consequences of failing to keep such reports secure could not result in ramifications of the nature to which lawyers are subject. The Lees note that there is no recognized investigator privilege from which confidentiality would arise, and investigators routinely disclose information in litigation. Rather than belaboring the confidentiality concern, instead, INS devotes its attention to an inherent role reversal by the Lees in pursuing an action in the shoes of their former adversary in the federal lawsuit.

 The fact that the assignment was made to an adversary does not, in and of itself, prohibit assignment. *See, e.g., Allstate*, 696 N.E.2d 482 (injured party as the assignee of a claim the tortfeasor-insured could have maintained against the insurer); *Plumlee v. Monroe Guaranty Ins. Co.*, 655 N.E.2d 350 (Ind.Ct.App.1995) (injured party as the tortfeasor's assignee brought breach of contract and negligence action against the tortfeasor's liability insurer). INS urges that, similar to the circumstances in *Picadilly*, the Lees' position in the assigned proceedings is inconsistent with their position in the underlying proceedings and contrary to Home Indemnity's position in the underlying proceedings. Thus, according to INS, the public policy analysis in *Picadilly* is applicable. Also, INS argues that, as a matter of judicial estoppel, the Lees cannot maintain a position contrary to that previously asserted.

In *Picadilly* the court determined that to prove attorney malpractice occurred in the underlying proceedings, specifically that punitive damages would not have been awarded if not for attorney error, the entire cause would have to be retried as in the underlying proceeding without the alleged error. The assignee of the claim would be forced to argue, as it had in the underlying proceedings, that punitive damages should be awarded because of the defendant's conduct. At the same time, to demonstrate malpractice, the assignee would have to argue to the jury in the assigned proceedings that the jury in the underlying proceedings awarded punitive damages due to the attorney's error. The court found the incongruity of presenting one jury with such contradictory choices incompatible with the integrity of the legal system and against public policy. *Picadilly*, 582 N.E.2d 338.

INS attempts to demonstrate similar incongruity in the present case. In undertaking a thorough examination and comparison of the allegations in the underlying cause of action between the Lees and Home Indemnity with that in the present action, INS ferreted out one instance wherein the Lees take a position apparently contrary to that taken by the Lees in the underlying action. INS raises inferences of other potential conflicts between the Lees's current position and the

one they or Home Indemnity took in the underlying action.

 A review of the designated materials reveals that the Lees consistently maintained that Home Indemnity, their employees and agents, including INS, acted improperly. The gravamen of this suit is that Home Indemnity's improper actions were based, in some portion, upon the improper investigation by INS. No inherent conflict is readily apparent. Accordingly, it is not at all clear that the assigned action will feature truly conflicting positions beyond those that could arise in any assigned action wherein an adversary in the underlying proceedings is the assignee. As noted above, standing in the shoes of one's former adversary does not prevent assignment. We will not speculate as to possible public policy conundrums which are not apparent in this case. This court may not issue advisory opinions. *See State ex rel. Goldsmith v. Superior Court of Marion County,* 463 N.E.2d 273 (Ind.1984).

 A finding of judicial estoppel, which prevents a party in a legal proceeding from asserting a position contrary to one previously asserted, *see Shewmaker v. Etter,* 644 N.E.2d 922 (Ind.Ct.App.1994), *opinion adopted, Hammes v. Brumley,* 659 N.E.2d 1021, 1030 (Ind.1995), would require a finding of inherent or certain inconsistency as well. As noted, no such inherent inconsistency has been established.

Further, a portion of INS's argument invites us to examine INS's potential fault relative to Home Indemnity's fault. As noted by the Lees, assessing evidence is not a matter for summary judgment.

Based upon a passage in *First Community Bank v. Kelley, Hardesty, Smith and Company, Inc.,* 663 N.E.2d 218 (Ind.Ct.App. 1996), INS urges that assignment in the present case would allow the Lees a double recovery. According to INS, the Lees have collected for their losses from Home Indemnity and will be able to seek further recovery from INS which INS implies would be a windfall. The argument is facially appealing, but the nature of assignments deflates the argument. The Lees have been assigned the right to pursue Home Indemnity's claim against INS. Any possible judgment would be in favor of Home Indemnity, the right to which has been assigned to the Lees.

As revealed by the complaint, the Lees are requesting punitive damages. Generally, "torts for personal injuries and for wrongs done to the person, reputation, or feelings of the injured party remain unassignable." *Allstate,* 696 N.E.2d at 485. The defendant in *Allstate* urged that a claim for punitive damages is personal in nature and not assignable. This court reasoned that the underlying tort claims involved injury to the insured's property including impaired credit, cloud on a title, and impaired ability to apply for loans; thus, the claims were assignable. Following an Arizona decision, we further concluded:

> [a] third party's claim is in reality the insured's claim, but the third party cannot recover damages personally suffered by the insured such as pain and suffering, embarrassment, mental anguish and humiliation. The assignee can only recover the insured's pecuniary losses. If the pecuniary damages (the excess judgment) are the result of conduct entitling a party to punitive damages, we find nothing in the law or public policy prohibiting a third party from asserting that claim.

*Id.* (quoting *Clearwater v. State Farm Mut. Auto. Ins.,* 161 Ariz. 590, 780 P.2d 423, 427 (Ariz.Ct.App.1989), *vacated in part,* 164 Ariz. 256, 792 P.2d 719 (1990)). We went on to state:

> If the excess judgment and resulting injury to Link's property is the consequence of oppressive, i.e. tortious, conduct by Allstate, then punitive damages, the remedy for such conduct, should also be assignable. This is consistent with the Indiana view that the types of torts which may not be assigned have become so narrow that non-assignability of tort actions is now the exception while assignability is the general rule.

*Allstate,* 696 N.E.2d at 485. This court concluded that assignability in the realm of bad faith insurance claims would promote the deterrence goals of punitive damages. *But see Hart Conversions v. Pyramid Seating Co.,* 658 N.E.2d 129 (Ind.Ct.App.1995) (right

to punitive damages under penal statute is personal and not assignable).

Accordingly, INS has not demonstrated that the trial court erred in failing to grant its summary judgment request on the issue of assignability.

### 2.

■ INS contends that, even if the insurance company could assign its claim to the Lees, the claim should be cast as a tort action for "investigator malpractice" or for injury to personal property, which have two-year statutes of limitation, rather than a contract action with a six-year statute of limitations. INS urges that the Lees filed this claim outside of the applicable time period.

■ When determining the applicable statutes of limitation, this court looks to the substance of the cause of action rather than the form in which it was pleaded. *Klineman, Rose & Wolf, P.C. v. North Am. Lab. Co.*, 656 N.E.2d 1206 (Ind.Ct.App.1995). The substance is ascertained through inquiry into the nature of the alleged harm and not by reference to the theories of recovery contained in the complaint. *Whitehouse v. Quinn*, 477 N.E.2d 270 (Ind.1985); *but cf. Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244 (Ind.1992) (appellant seeking to recast appellee's complaint as injury to personal property with an abbreviated statute of limitation criticized because many claims with longer statutes of limitation are also regarding personal property; thus, appellant's argument would render longer statutory periods superfluous).

In seeking to establish a two-year statute of limitations, INS terms the deficient performance "investigator malpractice." INS observes that its investigators are professionally licenced. Thus, INS maintains, the negligent or improper services are similar to malpractice. *See Raquet v. Thompson*, 693 N.E.2d 969 (Ind.Ct.App.1998) (surveyor's inaccurate report was similar to professional malpractice). Inasmuch as many services require or allow licensing, the claims arising from improper services are not subject to statutes of limitation for malpractice. The nature of the alleged harm will control.

■ INS also contends that the entire action is one for negligence amounting to injury to personal property. As such, the action must be commenced within two years of accrual. *See* Ind.Code Ann. § 34–1–2–2 (repealed and recodified at Ind.Code Ann. § 34–11–2–4 by P.L. 1–1998, Sec. 6). In determining when a cause of action accrues under the statute, the critical time is "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the act of another." *UNR–Rohn, Inc. v. Summit Bank*, 687 N.E.2d 235, 240 (Ind.Ct.App. 1997), *trans. denied*, 698 N.E.2d 1191 (Ind. 1998). INS alleges that Home Indemnity knew or should have known of any potential claim against INS by March 1993. The Lees rely upon Ind.Code Ann. § 34–1–2–1 (repealed and recodified at IC § 34–11–2–7), which provides for a six-year statute of limitations to bring a lawsuit for breach of an unwritten contract.

■ Home Indemnity's relationship with INS appears to be based upon an unwritten contract. The damages alleged are to personal property. "Where either of two statutes of limitations may apply to a claim, any doubt should be resolved in favor of applying the longer limitation." *Wells v. Stone City Bank*, 691 N.E.2d 1246 (Ind.Ct.App.1998), *trans. denied*, 706 N.E.2d 166 (Ind.1998).

Here, it is unnecessary to determine exactly which statutory period applies. INS contends that Home Indemnity knew or should have known of any potential cause of action by March 1993. The Lees contend that the earliest that Home Indemnity was aware of negligent acts in the investigation by INS was June 1994 when, in a deposition, the INS consulting engineer admitted deficient performance. The Lees contend that INS continued to provide services to Home Indemnity until January 1995. The Lees allege that the lawsuit, filed in July 1995, was timely within a two-year statute of limitations and within a six-year limitation period.

Unlike the first issue wherein questions of law were paramount, INS is requesting that this court examine conflicting evidence and inferences. As noted above, summary judg-

ment is not the appropriate means to resolve material issues of fact. This court cannot conclude that the trial court erred in denying summary judgment as to the limitation period.

### 3.

 INS contends that the trial court erred by failing to strike certain designated evidentiary matter submitted by the Lees as being improper and inadmissible. Affidavits submitted to support and oppose motions for summary judgment must be based upon personal knowledge, must affirmatively demonstrate that the affiant is competent to testify as to the matters asserted, and must set forth facts as would be admissible in evidence. *Comfax Corp. v. North American Van Lines, Inc.,* 638 N.E.2d 476 (Ind.Ct.App. 1994).

 INS specifically complains that the Lees submitted an affidavit prepared by a fire investigator who was not licenced in Indiana. A witness need not be licensed in order to assert an opinion in a given field. *See State v. Edgman,* 447 N.E.2d 1091 (Ind. Ct.App.1983). A trial court enjoys broad discretion in ruling on an expert's qualifications and in admitting opinion evidence. *Lucas v. Dorsey Corp.,* 609 N.E.2d 1191 (Ind.Ct. App.1993). The court did not abuse its discretion as to the fire investigator's affidavit.

INS complains that other affidavits and answers to interrogatories are irrelevant, express opinions as to others's states of mind, express legal conclusions, and are self-serving. In sum, the balance of INS's argument seeks to cast doubt on the relevancy of material which is not favorable to INS. INS requests that we strike an interrogatory answer in response to the interrogatory: "State each and every fact supporting the allegation in paragraph 9 of Count I of Plaintiff's Complaint that INS breached its contract with Home Indemnity." Record at 577. Not surprisingly, the open-ended interrogatory elicited a lengthy answer to support the complaint along with an objection on burdensomeness grounds. INS also requests that other matters be stricken, even though INS relies upon the source for its propositions. Given the discretion allowed a trial court to

make admissibility rulings, this court cannot say that the trial court abused its discretion in failing to strike the designated materials.

Judgment affirmed.

KIRSCH and MATTINGLY, JJ., concur.