Henry C. BENNETT and Schupan & Sons, Inc., Appellants–Defendants,

v.

John RICHMOND and Jennifer Richmond, Appellees–Plaintiffs.

No. 20A03–0906–CV–285.

Court of Appeals of Indiana.

Aug. 13, 2010.

Rehearing Denied Nov. 17, 2010.

of those standards were met, we reversed the award.

Milford M. Miller, Jason A. Scheele, Rothberg Logan & Warsco LLP, Fort Wayne, IN, Attorneys for Appellants.

David T. Stutsman, Jonathan W. Slagh, Stutsman & Mulvaney, Elkhart, Indiana, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Henry C. Bennett and Schupan & Sons, Inc. (collectively "Bennett") appeal the trial court's denial of their motion to correct error following a jury verdict in favor of John Richmond ("Richmond") and Jennifer Richmond [1] ("Jennifer") on their complaint alleging Bennett's negligence and damages. Bennett presents a single issue for our review, namely, whether the trial court abused its discretion when it permitted Sheridan McCabe, Ph.D., to testify that Richmond had sustained a brain injury as a result of the vehicular accident caused by Bennett.

We reverse and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY

On May 24, 2004, Richmond was driving a van in Elkhart when his van was rear-ended by a truck being driven by Bennett.[2] As a result of that collision, Richmond sustained injuries to his neck and back, and he underwent medical treatment with a physician and chiropractor. Then in December 2004, Richmond sustained a back injury in the course of his employment, which exacerbated the injuries he had sustained in the May 24 accident.

On December 21, 2005, Richmond filed a complaint alleging that Bennett's negligence was the proximate cause of his injuries. In October 2006, pursuant to a referral by his attorney, Richmond underwent a neuropsychological evaluation with Dr. McCabe, a psychologist, "to determine the presence and possible degree of disability associated with a closed head injury sustained in an automobile accident." Appellants' App. at 226. Richmond had not been diagnosed with a brain injury, but he had been experiencing headaches and memory loss since the May 2004 accident.

In the course of his evaluation, Dr. McCabe reviewed Richmond's medical records and Richmond's deposition in the instant litigation. In addition, Dr. McCabe interviewed Richmond and his wife and administered a battery of neuropsychological tests to Richmond. Dr. McCabe concluded as follows:

> The cognitive testing reveals that Mr. Richmond does manifest some deficits in the area of information processing and memory. The pattern of these problems is consistent with the history of a traumatic brain injury. It is also consistent with his complaint of memory difficulties. Clearly he experiences some difficulty in terms of his information processing. Furthermore the results of the Halstead–Reitan Battery indicate organic brain difficulties consistent with a traumatic brain injury and presenting an impairment that is at least mild and possibly moderate. The brain damage is somewhat diffuse and may involve sub-cortical structures. His history suggests that he did not experience any difficulties of this nature prior to the

---

1. For ease of discussion, while Jennifer is a party to this appeal, we will refer to the appellees, collectively, as Richmond.

2. Bennett was acting within the scope of his employment with Schupan & Sons, Inc. at the time of the collision.

2004 automobile accident in which he was injured and that he has presented these complaints consistently since that time. Additionally, he manifests other complaints that are generally associated with traumatic brain injury, including headaches, disturbances of both sleeping and appetite, and signs of irritability and self-esteem issues. He also clearly presents symptoms of anxiety and depression, also frequently observed in traumatic brain injury patients.

The personality testing and the testimony of his wife also reveal personality changes that are consistent with and typical of a closed head injury. The MMPI–2 suggests a degree of irritability, some defensiveness and emotional tenseness, tendency to social withdrawal and rather clear indications of self-doubt and depression. His wife clearly perceives these developments as manifest over the past two years and not characteristic of him prior to the accident.

*Based on this information, it is my opinion that Mr. Richmond experienced a traumatic brain injury in the accident. Given the absence of any of the symptoms of this condition prior to the accident, either in his report, the medical record or the observations of his wife, it seems evident that the accident produced the brain injury.* The result of the traumatic brain injury appears to be his experience of chronic headaches, a loss of cognitive efficiency, difficulties in information processing, and some adverse personality changes. These features have clearly impaired his occupational and social functioning.

Appellants' App. at 233 (emphasis added).

Prior to trial, Bennett moved to exclude Dr. McCabe's testimony, alleging that Dr. McCabe is "not competent to testify regarding medical diagnosis, which renders each of his opinions irrelevant and without

foundation." *Id.* at 219. Following a hearing, the trial court denied the motion and stated:

First the Court notes that this question is addressed by Indiana Evidence Rule 702. Generally, questions involving the admissibility of evidence are left to the sound discretion of the trial court. *C.C. v. State,* 826 N.E.2d 106 (Ind.Ct. App.2005), *trans. denied.* Additionally, the Court of Appeals will affirm a trial court's decision if there is any evidence supporting the decision. [*Id.* at 110.] Moreover, a party contesting the admission of evidence "will not prevail on appeal unless a substantial right of the party is affected." *Id.*

Defendants' argument is straightforward and simple: Plaintiffs' expert, Dr. McCabe, has "not had any systematic training in medicine other than [his] psychological training." Accordingly, he should be excluded as an expert witness and not be allowed to testify. Plaintiffs counter that McCabe has the expertise necessary to testify and that Defendants' objections are more properly attacked by a vigorous cross examination and offering counter opinion testimony rather than through the harsh remedy of excluding his testimony.

As stated before, the question over the admissibility of expert witness testimony is governed by Indiana Evidence Rule 702, which reads:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon

which the expert testimony rests are reliable.

Additionally, the Court notes:

> In determining whether scientific evidence is reliable under Indiana Evidence Rule 702(b), the trial court must determine whether such evidence appears sufficiently valid or trustworthy to assist the trier of fact. *Shafer & Freeman Lakes Envtl. Conservation Corp. v. Stichnoth,* 877 N.E.2d 475, 484 (Ind.Ct.App.2007), *trans. denied* (2008). "[T]he trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* The proponent of expert testimony bears the burden of establishing the reliability of the scientific tests upon which the expert's testimony is based. *Id.* In satisfying Indiana Evidence Rule 702(b), there is not a specific test or set of prongs, which must be considered. *Id.* We may consider the five factors set out in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993): (1) whether the theory or technique at issue can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted within the relevant scientific community. *Stichnoth,* 877 N.E.2d at 484. "While *Daubert* is not binding upon the determination of issues under Indiana Evidence Rule 702, we have acknowledged the utility of applying the five factors." *Id.*

*Kempf Contracting and Design, Inc. v. Holland–Tucker,* 892 N.E.2d 672, 677 (Ind.Ct.App.2008).

As Plaintiff points out, our Supreme Court stated its purpose in adopting Evidence Rule 702 was to "liberalize, rather than to constrict, the admission of reliable scientific evidence." *Sears Roebuck and Co. v. Manuilov,* 742 N.E.2d 453 (Ind.2001). Defendants argue that McCabe's testimony should be excluded solely because he has no medical degree. This "deficiency" in itself does not undermine the scientific principles upon which McCabe might offer an opinion. Indeed, Plaintiff has presented a good case that McCabe's testimony could be based upon sound scientific principles and aid the trier of fact in assessing the case. At this point, the Court is prone to assess the myriad of what McCabe could testify to at trial rather than exclude him totally as a possible witness on a pretrial motion.[3] Accordingly, the Court DENIES Defendant's motion to exclude McCabe as an expert witness, reserving the right to rule to the contrary on certain testimony by McCabe at trial.

[INTERNAL FOOTNOTE 3:]

Plaintiffs should consider, however, that they may have trouble in convincing the Court that sound scientific principles exist to allow McCabe, a non-medical doctor, to "diagnose" whether Mr. Richmond sustained a traumatic brain injury as a result of the accident. This is a different question, however, from testifying that persons suffering from traumatic brain injuries exhibit symptoms similar to the ones he observed when examining Mr. Richmond. From the record before the Court, however, the Court will not exclude McCabe's testimony wholesale. The myriad of issues that McCabe might be asked to testify upon may very well include ones outside the bounds of reliable scientific principles upon which he is competent to testify. Conversely, McCabe is undoubtedly competent to testify on some issues. Whether these issues will be enough to convince the trier of fact to award Plaintiffs compensation for a

"traumatic brain injury" is another question. The Court will not speculate as to each issue or adopt Defendant's wholesale approach of excluding McCabe as a witness at this time. To do otherwise would amount to "micro-managing" the Plaintiffs' case for them, which the Court will not do.

Appellants' App. at 29–30.

During trial, over Bennett's objection, the trial court permitted Dr. McCabe to testify that Richmond sustained a brain injury as a result of the accident caused by Bennett. The jury awarded Richmond $200,000 in damages, and the trial court entered judgment accordingly. Bennett filed a motion to correct error alleging that Dr. McCabe was not qualified to testify that Richmond had sustained a brain injury and that, therefore, the verdict was not supported by the evidence. The trial court denied that motion. This appeal ensued.

### DISCUSSION AND DECISION

■ Bennett contends that the trial court abused its discretion when it permitted Dr. McCabe to testify that Richmond had sustained a brain injury as a result of the accident in May 2004. The trial court is considered the gatekeeper for expert opinion evidence. *Clark v. Sporre,* 777 N.E.2d 1166, 1170 (Ind.Ct.App.2002). In other words, the trial court's function is to control the admission of proffered expert testimony rather than merely admitting whatever is offered and leaving it to the jury to determine what weight it should be given. *State Dep't of Transp. v. Hoffman,* 721 N.E.2d 356, 359 (Ind.Ct.App.1999). To fulfill this function, it is entrusted with the discretion to rule on the admissibility of expert opinion evidence. *Clark,* 777 N.E.2d at 1170. The trial court's exclusion or admission of expert testimony will be reversed only for abuse of that discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the

court has misinterpreted the law. *Johnson v. Eldridge,* 799 N.E.2d 29, 33 (Ind.Ct.App.2003), *trans. denied.*

■ Indiana Evidence Rule 702 requires that the expert be qualified by knowledge, skill, experience, training or education. An expert must have sufficient skill in the particular area of expert testimony before the expert can offer opinions in that area. *Hannan v. Pest Control Servs., Inc.,* 734 N.E.2d 674, 679 (Ind.Ct.App.2000). An expert in one field of expertise cannot offer opinions in other fields absent a requisite showing of competency in that other field. *Id.* Moreover, questions of medical causation of a particular injury are questions of science generally dependent on the testimony of physicians and surgeons learned in such matters. *See id.*

■ Here, again, Dr. McCabe is not a medical doctor, but a psychologist. There was no showing that Dr. McCabe ever received any medical education or training or, in particular, any education or training relevant to determining the etiology of brain injuries. The evaluation of a brain injury, which is within Dr. McCabe's field of expertise, is distinct from the determination of the medical cause of a brain injury, which is generally exclusively within the purview of medical doctors. *See id.* While "[s]pecific degrees, certificates of training or membership in a professional organization are not required'" to give medical causation testimony, *see* 13 Robert Lowell Miller, Jr., Indiana Practice: Indiana Evidence § 702.107 n. 7 (3d ed. 2007) (quoting 3 Graham Handbook § 702:2 (6th ed. 2006)), and a witness need not be licensed in order to assert an opinion in a given field, *see INS Investigations Bureau, Inc. v. Lee,* 709 N.E.2d 736, 744 (Ind.Ct.App.1999), *trans. denied,* here, Dr. McCabe has not demonstrated that he is

qualified to opine on causation in this case.[3] Dr. McCabe testified only that, in his professional continuing education courses, he has "touched on subjects that relate to evaluation of traumatic brain injuries," transcript at 311, and that he has received referrals from two Elkhart neurologists, *id.* at 69–70. We hold that the trial court abused its discretion when it permitted Dr. McCabe to testify that Richmond sustained a brain injury as a result of the accident with Bennett.

Richmond's reliance on our Supreme Court's opinion in *Sears Roebuck and Co. v. Manuilov,* 742 N.E.2d 453 (Ind.2001), to support the admissibility of Dr. McCabe's testimony is misplaced. In *Manuilov,* a *psychiatrist* who is by education and training a medical doctor, was permitted to testify regarding the cause of plaintiff's brain damage over the defendant's objection that that subject matter was "not directly within his area of expertise as a physician and psychiatrist." *Id.* at 461. The Court observed that those particular issues regarding the scope of the physician's expertise were not grounds for error but were "matters of weight and credibility and were vigorously raised for the jury's consideration[.]" *Id.* But again, here, Dr. McCabe is not a medical doctor and has not otherwise demonstrated his qualifications to testify on the issue of medical causation, so the question is not merely the scope of his expertise but his lack of qualifications.

Richmond's reliance on this court's opinion in *Indianapolis Union Railway v. Walker,* 162 Ind.App. 166, 318 N.E.2d 578 (1974), is also misplaced. In that case, a professor of psychology and neurosurgery was permitted to testify regarding the existence and extent of the plaintiff's brain damage. But the psychologist's testimony did not include an opinion regarding the cause of that brain damage, which is the central issue in the instant case.

Here, again, Dr. McCabe has not demonstrated the requisite medical expertise to explain the etiology of Richmond's alleged brain injury. While, generally speaking, Dr. McCabe demonstrated that he would have been qualified to opine that Richmond's test results indicate that he has sustained a brain injury from an unknown cause, absent qualifications in determining the etiology of brain injuries, Dr. McCabe's testimony went too far in identifying the May 2004 accident as the cause of Richmond's alleged brain injury.

In *Daub v. Daub,* 629 N.E.2d 873, 877–78 (Ind.Ct.App.1994), *trans. denied,* this court explained:

> An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 635 (Ind. 1991). This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the defendants' conduct. The "but for" analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm. *Id.*
>
> Hence, in order for the plaintiff to carry her burden of proof, she must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both

---

**3.** To clarify, while medical doctors will obviously be the best candidates to opine on issues of medical causation, we do not hold that a psychologist is per se unqualified to give such testimony. Under Evidence Rule 702, our evaluation on appeal turns on the proffered expert's knowledge, skill, experience, training, or education. A witness's academic suffix is of course a relevant consideration, but it is not dispositive.

that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of her injury. *See Palace Bar, Inc. v. Fearnot,* 269 Ind. 405, 381 N.E.2d 858, 861 (1978). The plaintiff's burden may not be carried with evidence based merely upon supposition or speculation. *Id.* Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. *Noblesville Casting Division of TRW, Inc. v. Prince,* 438 N.E.2d 722, 731 (Ind.1982). Civil liability may not be predicated purely upon speculation. *Id.*

*When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony. Antcliff v. Datzman,* 436 N.E.2d 114, 121 (Ind.Ct.App.1982); *Morphew v. Morphew,* 419 N.E.2d 770, 771 (Ind.Ct. App.1981). *Ordinarily, however, the question of the causal connection between a permanent condition, an injury and a preexisting affliction or condition is a complicated medical question. See Noblesville Casting Division,* 438 N.E.2d at 732. When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary. [*Brown v.*] *Terre Haute Regional Hospital,* 537 N.E.2d [54,] 61 [ (Ind.Ct.App.1989) ]; *Watson v. Medical Emergency Services,* 532 N.E.2d 1191, 1196 n. 2 (Ind.Ct.App. 1989), *trans. denied.* An expert, who has the ability to apply principles of science to the facts, has the power to draw inferences from the facts which a lay witness or jury would be incompetent to draw. *See Davis v. Schneider,* 182 Ind.App. 275, 395 N.E.2d 283, 290 (1979). *But, even an expert's opinion,*

*in conjunction with other evidence, may be so lacking in probative value as to be insufficient to support a verdict. See Strong v. State,* 538 N.E.2d 924, 930 (Ind.1989).

(Emphases added).

■ Here, even if Dr. McCabe were qualified to give causation testimony in this case, his testimony was lacking in probative value. At trial, Dr. McCabe presented a video explaining how even a minor whiplash injury can result in brain damage. But Dr. McCabe did not testify regarding the mechanics of the vehicular accident in this case to demonstrate how the impact might have resulted in Richmond's brain damage. For instance, Dr. McCabe did not describe the speed or force of the impact of the collision between the vehicles.

Instead, Dr. McCabe offered a simple inferential analysis of the cause of Richmond's alleged brain injury based upon Richmond's lack of any history of memory loss, cognitive dysfunction, headaches, or other symptoms prior to the May 2004 accident. Dr. McCabe testified that "[g]iven the absence of any of the symptoms of this condition prior to the accident, either in his report, the medical record, or the observations of his wife, it seems evident that the accident produced the brain injury." Appellants' App. at 105–06. His opinion was not based on clinical medical evidence of the alleged injury. Under the circumstances, his opinion is "nothing more than 'subjective belief' and 'unsupported speculation' which is not the proper subject of expert testimony under *Daubert* [.]" *Ind. Mich. Power Co. v. Runge,* 717 N.E.2d 216, 235 (Ind.Ct.App.1999) (quoting *Tucker v. Nike,* 919 F.Supp. 1192, 1197 (N.D.Ind.1995)).

Again, no medical doctor or other qualified practitioner diagnosed Richmond with

a brain injury. Rather, based upon neuropsychological testing given more than two years after the accident, Dr. McCabe opined that Richmond had sustained a brain injury as a result of the accident. The trial court should have exercised its discretion as gatekeeper prior to trial to exclude Dr. McCabe's proffered causation testimony based upon his lack of qualifications to give such testimony.

We also agree with Bennett's assertion that, without a proper foundation, the rest of Dr. McCabe's opinions were irrelevant. Without proper evidence establishing the May 2004 accident as the cause of Richmond's alleged brain injury, Dr. McCabe's testimony was irrelevant and, therefore, inadmissible under Evidence Rule 402. ("Evidence which is not relevant is not admissible.")

 Finally, we hold that the admission of Dr. McCabe's testimony is not harmless error. "[U]nlike garden variety rulings admitting or excluding evidence, Rule 702 determinations are more likely to have a direct impact on the ultimate trial court judgment or jury verdict and, hence, to 'affect the substantial rights of the parties.'" Judge Edward W. Najam, Jr., "The Current State of the Law," in *IRE 702 and the Daubert Principles,* ICLEF, January 28, 2005, at 1 (quoting Indiana Trial Rule 61). Here, without any admissible evidence that the accident caused Richmond's alleged brain injury, the demonstrative video and Dr. McCabe's entire testimony regarding the impact of the alleged brain injury on Richmond's life were inadmissible under Indiana Evidence Rule 402. *See, e.g., Ind. Mich. Power Co.,* 717 N.E.2d at 235 (holding expert testimony regarding possible health effects of electric and magnetic fields on plaintiffs' health irrelevant under Evidence Rule 402 where no evidence that defendant's negligence caused plaintiffs' health conditions). And

the evidence regarding Richmond's damages other than the alleged brain injury is not sufficient to support the $200,000 jury verdict. Accordingly, we reverse and remand for a new trial. And, to reiterate, Dr. McCabe's testimony is inadmissible absent testimony by a qualified expert that Richmond sustained a brain injury as a result of the accident in May 2004.

Reversed and remanded for a new trial.

VAIDIK, J., and BROWN, J., concur.