Wesley H. FUEGER, Appellant–
Defendant,

v.

CASE CORPORATION, Case IH, Case
Equipment Corp., Case LLC,
CNH America LLC.,

and

Dennis Fueger, individually and d/b/a
Fueger Farms, Appellees–
Plaintiffs.

No. 74A04–0712–CV–683.

Court of Appeals of Indiana.

May 16, 2008.

Ronald Warrum, Jake Warrum, Evansville, IN, Attorney for Appellant.

Mark A. Kircher, Milwaukee, WI, Nicholas C. Pappas, Julia Blackwell Gelinas, Lucy R. Dollens, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Wesley A. Fueger ("Fueger") appeals from the trial court's order granting the motion to strike the expert affidavit of Walter Yeager ("Yeager") and the order granting the motion for summary judgment and entering final judgment, filed by and in favor of Defendants–Appellees Case Corporation, Case IH, Case Equipment Corporation, Case LLC, CNH America LLC (collectively "Case").

We reverse and remand.

### ISSUES

Fueger presents the following issues for our review:

I. Whether the trial court erred by granting Case's motion to strike the affidavit of Walter Yeager, Fueger's expert witness.

II. Whether the trial court erred by granting Case's motion for summary judgment.

### FACTS AND PROCEDURAL HISTORY

The facts revealed by the designated evidence state that Fueger suffered near fatal injuries on July 7, 2003 while working with a Case CNH 1845C Uni–Loader ("skid loader") on his father's farm. On July 5, 2005, Fueger filed his complaint for damages he sustained. In the complaint, Fueger alleged that Case had manufactured a defective and unreasonably dangerous skid loader. The skid loader used by Fueger was manufactured by Case on March 3, 1994. Dennis Fueger, Fueger's father, purchased the skid loader from Mile's Farm Supply in Owensboro, Kentucky.

On January 15, 2007, Case filed its motion for summary judgment and supporting documents. On February 9, 2007, Fueger filed his brief in opposition to Case's motion for summary judgment and supporting documents. Among those documents was the affidavit of Yeager. On April 16, 2007, Case deposed Yeager. On August 28, 2007, the trial court held a hearing on Case's motions. At the hearing, Yeager's affidavit was placed in evidence and a portion of his deposition was read into the record. On October 8, 2007, the trial court ordered the filing of Yeager's deposition, then entered its orders striking Yeager's affidavit and precluding him from offering testimony, and granting Case's motion for summary judgment. The trial court entered a final judgment for Case disposing of all of Fueger's claims as to Case.

Defendant–Appellee Dennis Fueger, individually and doing business as Fueger Farms, is a party to this appeal, as is Mega Life and Health Insurance Company, which was allowed to intervene below.

## DISCUSSION AND DECISION

■ Our standard of review for a trial court's order granting a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *State Farm Mutual Auto. Ins. Co. v. Steury*, 787 N.E.2d 465, 468 (Ind.Ct.App.2003). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Id.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.*

## I. EXPERT'S AFFIDAVIT

Case argued below and here on appeal that Yeager, Fueger's expert, is not qualified to give an expert opinion and does not offer any reliable opinions. Case challenged Yeager's affidavit in its motion to strike. More specifically, Case argued that Yeager's opinions on the subject of design defects in the skid loader were speculative and unreliable because he failed to employ any methodology in reaching his opinions, and offered merely after-the-fact conjecture.

Ind. Evidence Rule 702, the evidentiary rule concerning expert testimony, provides as follows:

(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

■ An expert must be qualified by knowledge, skill, experience, training or education. *Lytle v. Ford Motor Co.*, 814 N.E.2d 301, 308 (Ind.Ct.App.2004). Furthermore, an expert must have sufficient skill in the particular area of expert testimony before an opinion may be offered in that area. *Id.* An expert in one field of expertise cannot offer opinions in other fields absent a requisite showing of competency in that other area. *Id.*

■ The proponent of the expert testimony bears the burden of establishing the foundation and reliability of the scienti-

fic principles and tests upon which the expert's testimony is based. *Id.* Where an expert's testimony is based upon the expert's skill or experience rather than on the application of scientific principles, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of lay persons and the witness possesses sufficient skill, knowledge or experience in the field to assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.* at 308–09. However, when the expert's testimony is based upon scientific principles, the proponent of the testimony must also establish that the scientific principles upon which the testimony rests are reliable. *Id.* at 309.

■ The trial judge's function under Evid. Rule 702, therefore, is as gatekeeper, ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Id.* When expert scientific testimony is proffered, the court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue. *Id.* Scientific knowledge, to be admissible, must be more than subjective belief or unsupported speculation. *Id.* Expert testimony, consequently, must be supported by appropriate validation or "good grounds" based on what is known, establishing a standard of evidentiary reliability. *Id.*

Whether a theory or technique can be empirically tested is one question that will assist in determining whether the scientific knowledge will assist the trier of fact. *Id.* Another factor is whether the theory or technique has been subjected to peer review and publication. *Id.* Widespread acceptance or, conversely, minimal support

can be weighty factors in the determination of whether certain evidence is admissible under Evid. Rule 702. Again, these factors, while useful do not comprise a specific test that must be satisfied to pass muster under Evid. Rule 702(b).

The supreme court reviewed a challenge to expert testimony in a criminal case in *Malinski v. State*, 794 N.E.2d 1071 (Ind. 2003). The supreme court found that admission of the expert testimony was not error because the expert's opinion was not a matter of "scientific principles" under Evid. Rule 702(b), but was expert testimony based upon "specialized knowledge." *Id.* at 1084.

In *PSI Energy, Inc. v. Home Insur. Co.*, 801 N.E.2d 705 (Ind.Ct.App.2004), *trans. denied,* this court upheld the trial court's decision not to strike the testimony of an expert regarding his theory about environmental contamination that had not been peer-reviewed or written down. A panel of this court held that the expert's theory was based upon relatively simple concepts that were reliably based upon the expert's observations and application of his specialized knowledge to those observations. *Id.* at 741.

In *Lytle v. Ford Motor Co.*, 696 N.E.2d 465 (Ind.Ct.App.1998), the first appeal in that products liability action, this court noted as follows:

> Thus, where an expert's testimony is based upon the expert's skill or experience rather than on the application of scientific principles, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of lay persons and the witness possesses sufficient skill, knowledge or experience in the field to assist the trier of fact to under-

stand the evidence or to determine a fact in issue.

*Id.* at 469–70. Furthermore, if one party succeeds at having expert testimony admitted, other remedies remain for the opposing party. In *Hottinger v. Trugreen Corporation et al.*, 665 N.E.2d 593 (Ind.Ct. App.1996), a panel of this court said:

> To the extent that Hottinger's evidence on the causation of her injuries is shaky, the conventional devices available to Trugreen including vigorous cross-examination, the presentation of contrary evidence, and careful instruction on the burden of proof, are the appropriate safeguards to be employed here, as Dr. Heuser's opinion satisfies the standards of Evid. Rule 702. *See Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798.

*Id.* at 598 (overruled on other grounds by *Dow Chemical Co. v. Ebling ex rel. Ebling,* 753 N.E.2d 633 (Ind.2001)).

The trial judge had before him Yeager's affidavit and curriculum vitae, in addition to his deposition testimony. Yeager graduated from Purdue University in 1958, receiving a bachelor of science degree in aeronautical engineering (propulsion option). He received a certificate in propulsion and power conversion from the University of California, Los Angeles in 1970. Yeager is licensed as a registered professional mechanical engineer in both Indiana and California, and a safety engineer in California. Yeager received specialized education in program management, product safety, total quality management, Six Sigma reliability[1], and frontline leadership[2]. He is a member of the International Society of Air Safety Investigators, the System Safety Society, the Society of Automotive Engineers, the American Institute of Aeronautics and Astronautics, and the National Society of Professional Engineers. Yeager owns a farm in Spencer County, Indiana and worked on his family farm in his youth. Yeager's work experience included employment with Douglas Aircraft, General Dynamics, The Bendix Corporation, Hughes Aircraft Company, AlliedSignal Inc., and most recently, his own engineering consulting business.

Yeager had personally inspected the skid loader at issue in the present matter. In his affidavit, Yeager opined that when the skid loader was placed in the stream of commerce, the skid loader had three engineering safety-design defects. The first had to do with the location of the on/off switch, the second with the seat bar control, and the third with the bucket controls.

Case challenged Yeager's qualifications as an expert claiming that Yeager's testimony and affidavit should be excluded. More specifically, Case alleged that Yeager was a rocket scientist, and that potential design defects in skid loaders were outside the area of Yeager's expertise.

Case's interpretation of Evid. Rule 702 in this specific situation is too restrictive. Yeager's opinion was not a matter of "scientific principles" under Evid. Rule 702(b), but was expert testimony based upon specialized knowledge. *See Lytle,* 814 N.E.2d

---

1. "Six Sigma is a methodology of defining, measuring, analyzing, improving and controlling the quality in every one of a company's products, processes and transactions—with the ultimate goal of virtually eliminating all defects." John S. Ramberg, Six Sigma: Fad or Fundamental?, Quality Digest, May 2000, http://www.qualitydigest.com/may00/html/sixsigmapro.html.

2. Frontline leadership courses involve training in conflict resolution and managing employees in such a way that productivity is maximized.

at 309; *Malinski,* 794 N.E.2d at 1085. Yeager is a certified professional mechanical engineer who examined the skid loader in question and offered his opinion about what he believed to be design defects in the skid loader. The gatekeeping inquiry in this situation is not like the *Daubert*[3] analysis where scientific principles are involved. Engineering is a recognized field of study. Therefore, we conclude that the trial court erred by excluding Yeager's testimony and affidavit. Any challenge to Yeager's knowledge of what was state of the art in 1994, and any gaps in his knowledge of skid loaders could be exploited at trial through vigorous cross-examination and should not have been weighed by the trial court in a motion to strike and motion for summary judgment.

## II. SUMMARY JUDGMENT

Because Yeager's affidavit was erroneously struck, the trial court also erred in granting summary judgment in favor of Case. Yeager's affidavit conflicts with Case's expert's affidavit regarding any potential defects in the design of the skid loader. Therefore, there is a question of fact that precludes the entry of summary judgment in this matter. The trial court's ruling in this regard must be reversed and remanded for further proceedings.

## CONCLUSION

The trial court erred by excluding the affidavit of Fueger's expert. The opinions offered were not subject to a *Daubert* analysis, but were based upon specialized knowledge. Consequently, the trial court also erred by granting summary judgment

in favor of Case because of the existence of a genuine issue of material fact.

Reversed and remanded.

SHARPNACK, J., and CRONE, J., concur.

---

**3.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Daubert* analysis is helpful but not controlling when analyzing Ind. Evidence Rule 702(b). The concerns raised in *Daubert* coincide with the requirements of Evid. Rule 702(b).