**Reginald N. PERSON, Jr.,
Appellant–Plaintiff,**

v.

**Carol A. SHIPLEY, Appellee–
Defendant.**

**No. 20A03–1008–CT–463.**

Court of Appeals of Indiana.

May 13, 2011.

Publication Ordered June 8, 2011.

---

Douglas A. Mulvaney, Stutsman, Mulvaney & Deboer, Elkhart, IN, for Appellant.

Deborah A. Kapitan, Kopka, Pinkus, Dolin & Eads, L.L.C., Crown Point, IN, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

The driver of an eighteen-wheel semi tractor trailer sued the driver of a sedan for injuries he allegedly sustained after his truck was rear-ended by the sedan. Expert witnesses presented by the defendant opined that the injuries allegedly suffered by the semi driver were not likely caused by what they concluded, based upon certain assumptions, must have been a low-impact collision. A jury found in favor of the defendant and awarded no damages to the semi driver. On appeal, the semi driver contends that the trial court abused its discretion in admitting the defendant's experts' opinions. Finding that the trial court indeed abused its discretion and that the admission of the expert testimony prejudiced the semi driver's substantial rights, we reverse and remand.

### Facts and Procedural History

The facts most favorable to the jury's verdict indicate that on November 16, 2002, Carol Shipley was driving a Buick Park Avenue sedan westbound on Interstate–80 in Elkhart County when she fell asleep at the wheel. Shipley's vehicle rear-ended Person's eighteen wheel semi-tractor trailer, which was carrying a load of bananas. Person filed a complaint for damages against Shipley on November 12, 2004. Person alleged that he suffered neck and lower back injuries as a result of the accident.

Prior to the jury trial, on July 19, 2010, Person filed motions to exclude the video-

taped deposition testimony of Shipley's two expert witnesses, Charles Turner, Ph. D., and Thomas Lazoff, M.D. Shipley moved to strike Person's motions to exclude arguing that they were untimely filed. The trial court agreed that the motions to exclude were untimely and granted Shipley's motion to strike. However, because Person had made contemporaneous objections during the depositions to the admissibility of the expert opinion testimony, the trial court agreed that it would address admissibility during trial. During trial, on July 29, 2010, Person renewed his objections to the admissibility of various portions of the testimony of Dr. Turner and Dr. Lazoff. The trial court overruled the objections and admitted the expert testimony. On July, 30, 2010, the jury returned its verdict in favor of Shipley and awarded no damages to Person. Accordingly, the trial court entered judgment on the verdict in favor of Shipley. Person now appeals.

### Discussion and Decision

■■■ The trial court is considered the gatekeeper for expert opinion evidence. *Doe v. Shults–Lewis Child & Family Servs., Inc.,* 718 N.E.2d 738, 750 (Ind. 1999). Indiana Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

In order for a witness to qualify as an expert, certain requirements must be met. *Spaulding v. Harris,* 914 N.E.2d 820, 829 (Ind.Ct.App.2009), *trans. denied* (2010). First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average layperson. *Id.* Second, the witness must be shown to have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Id.* Finally, the proponent of expert testimony bears the burden of establishing the foundation and reliability of the scientific principles and tests upon which the expert's testimony is based. *Id.* Once admissibility of the expert's opinion is established,

the strengths and weaknesses of the expert's opinion may be questioned against the facts, its conclusiveness or lack thereof may be explored, and any lack of certitude may be fully revealed to the finder of fact. The finder of fact is entitled to weigh and determine the credibility to be accorded the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast.

*Brooks v. Friedman,* 769 N.E.2d 696, 702 (Ind.Ct.App.2002), *trans. denied.*

■■■ The determination of the admissibility of expert testimony is a matter within the sound discretion of the trial court. *Id.* at 826. Thus, the trial court's exclusion or admission of expert testimony will be reversed only for abuse of that discretion. *Id.* That is to say, we will reverse only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Faulkner v. Markkay of Indiana, Inc.,* 663 N.E.2d 798, 800 (Ind.Ct.App.1996), *trans. denied.* Moreover, even if an evidentiary decision was an abuse of discretion, we will not reverse if the ruling constituted harmless

error. *Decker v. Zengler*, 883 N.E.2d 839, 845 (Ind.Ct.App.2008), *trans. denied.* An error is harmless if it does not affect the substantial rights of the parties. *Bonnes v. Feldner*, 642 N.E.2d 217, 219 (Ind.1994) (citing Ind. Trial Rule 61).

Person first contends that the trial court abused its discretion when it admitted the testimony of Charles Turner, Ph.D. Dr. Turner offered two expert opinions in this case: (1) the change of speed or velocity of Person's truck upon impact was minimal; and (2) as a result, it is unlikely that the injuries claimed by Person were caused by the accident. Person contends that Dr. Turner was not qualified to render those expert opinions and further that his opinions were unreliable. We will address Dr. Turner's expert qualifications and the reliability of his opinions in turn.

 Regarding Dr. Turner's qualifications as an expert, Dr. Turner holds an undergraduate degree in mechanical engineering and a Ph.D. in biomedical engineering. Dr. Turner's twenty-seven-page curriculum vitae, which was offered into evidence in this case, reflects his extensive teaching experience, education, honors, and awards. Dr. Turner has authored an impressive list of research publications almost too numerous to count. The trial court here specifically noted that it had never seen such an extensive curriculum vitae. Tr. at 21. Dr. Turner currently teaches at the Indiana University School of Medicine and is a Chancellor's Professor of Orthopedic Surgery and Biomedical Engineering. Dr. Turner teaches medical students about biomechanics and the make-up of the musculoskeletal system.

Based upon his education and training, Dr. Turner was qualified to calculate the approximate change of speed or velocity of Person's truck upon impact. Although we recognize that Dr. Turner has no specific training in the field of accident reconstruc-

tion, he has a degree in mechanical engineering and, based upon his own testimony, twelve years of experience in reviewing cases such as the one at issue. Dr. Turner testified that he had studied much literature as to velocity and changes in speed based upon forces. This court has noted that generally, engineers and police officers fall within the classifications of experts competent to render an opinion on the speed of an automobile in accident cases. *City of Indianapolis v. Robinson*, 427 N.E.2d 902, 906 (Ind.Ct.App.1981). We emphasize that Dr. Turner did not purport to offer testimony as to the reconstruction of the accident per se but merely was asked to compute the change in speed or velocity of the semi truck upon impact. Dr. Turner was qualified to render an opinion as to change in velocity based upon his education and experience.

 Dr. Turner was also asked to opine as to the causal relationship between the accident and Person's injuries. We note that an expert in one field of expertise cannot offer opinions in other fields absent a requisite showing of competency in that other field. *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 679 (Ind. Ct.App.2000), *trans. denied* (2001). Questions of medical causation of a particular injury are questions of science dependent on the testimony of physicians and surgeons learned in such matters. *Id.* Nevertheless, while Dr. Turner is not a medical doctor, Dr. Turner teaches medical students about biomechanics and the musculoskeletal system. Dr. Turner's testimony centers around the forces involved in the accident and the lower back support provided by the seat. His testimony as to the lack of a causal relationship between the accident and the injuries focuses on the science of engineering and physics as opposed to the science of medicine. Dr. Turner's extensive education, background,

training, and general knowledge of effect of forces on the musculoskeletal system makes him qualified to render an opinion on causation pursuant to Indiana Evidence Rule 702(a).

■■■■ Although Dr. Turner is certainly a highly qualified expert witness, consideration of an expert credentials alone is not conclusive of evidence reliability. *See Lytle v. Ford Motor Co.,* 696 N.E.2d 465, 474 (Ind.Ct.App.1998), *trans. denied* (1999). Indeed, under Indiana Evidence Rule 702, the threshold question is whether the evidence is reliable under section (b). *Armstrong v. Cerestar USA, Inc.,* 775 N.E.2d 360, 367 (Ind.Ct.App. 2002), *trans. denied* (2003). If the evidence is not reliable, it will certainly not assist the judge or jury as required by section (a). *Id.* "[T]he trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Shafer & Freeman Lakes Envtl. Conservation Corp. v. Stichnoth,* 877 N.E.2d 475, 484 (Ind.Ct.App.2007), *trans. denied* (2008).

■■■ The proponent of expert testimony bears the burden of establishing its reliability. *Id.* To be admissible, scientific knowledge must be more than subjective belief or unsupported speculation. *Fueger v. Case Corp.,* 886 N.E.2d 102, 105 (Ind.Ct. App.2008), *trans. denied.* Consequently, expert testimony must be supported by appropriate validation or "good grounds" based on what is known, establishing a standard of evidentiary reliability. *Id.*

■■■ Dr. Turner was asked to render an opinion as to the circumstances surrounding the accident and the likelihood of injury caused by the accident. Dr. Turner opined that the momentum transfer or impact to Person's truck was minimal due to the weight difference between the two vehicles and, therefore, it was unlikely that Person suffered his claimed lower back injury.[1] Dr. Turner testified that, in order to determine momentum transfer, he made calculations regarding the change in velocity of the truck upon impact based on the speed and weight of each vehicle. Person does not question the scientific principles upon which a calculation as to the change of velocity rests. However, in making his calculations, Dr. Turner made assumptions regarding the speed and weight of the vehicles. Person contends that these assumptions are wholly without factual foundation and, thus, Dr. Turner's opinion testimony is unreliable. Under the circumstances, we agree.

With regard to speed, Dr. Turner determined that Person was traveling at fifty-five miles per hour based upon Person's own testimony.[2] Because Shipley did not know the speed at which she was traveling, Dr. Turner merely assumed that Shipley was traveling at either eighty-five or ninety miles per hour. Dr. Turner did not perform any investigation of the accident scene or the vehicles. Dr. Turner based his opinion on his review of post-accident photographs and stated that it "looked like

---

1. Dr. Turner testified that, based on his calculations, the change in velocity of Person's truck upon impact was 1.7 miles per hour. Appellant's App. at 126.

2. We note that it appears from the record that Person testified at trial; however, his testimony was neither included nor requested to be included in the record on appeal. Because the parties seem to agree as to the relevant content of Person's testimony, our review of that testimony is not crucial to our resolution of this matter. Nevertheless, we admonish Person's counsel that such testimony should have been included as it would have been useful to this Court.

the crash occurred at maybe 30 miles per hour. And if that is the case, [Shipley] must have been traveling at least 85 mph when she hit the back of the truck." Appellant's App. at 124. Dr. Turner admitted that he was just making an "educated guess" and that he was unable to "do a highly detailed analysis from these pictures." *Id.*

With regard to weight, Dr. Turner did not know the actual weight of Shipley's vehicle, a four-door Buick Park Avenue. He estimated the weight to be between 3,000 and 4,000 pounds based upon general available resources. Dr. Turner similarly did not know the weight of Person's semi truck. Dr. Turner did not attempt to discover the actual weight of the truck or to determine whether it was fully or partially loaded. Dr. Turner did not come up with a range of estimates based upon available facts and resources as to what a fully or partially loaded truck of bananas might weigh, nor did he make a conservative estimate. Instead, Dr. Turner merely assigned the truck a weight of 80,000 pounds, the maximum gross weight allowable by the Department of Transportation. *Id.* at 135.

■ First, we find unreliable Dr. Turner's assumption as to the relative speeds of the vehicles based upon his minimal review of a few photographs. As stated, Dr. Turner conducted *no* other investigation or review of evidence to determine the actual or even approximate speed of Shipley's vehicle in particular. More significantly, Dr. Turner's assumption that Person's truck weighed 80,000 pounds, the maximum weight allowable by law, is wholly unsupported by any facts in the record. This is not just some insignificant detail to Dr. Turner's conclusion as to the change in velocity of the truck upon impact. The lighter the truck, the greater the change in velocity and, hence, the greater the chance for injury. The heavier the truck, the converse situation occurs. In light of the lack of evidence as to the actual weight of Person's truck, Dr. Turner could have rendered calculations based upon various hypothetical weights and rendered opinions accordingly.[3] He did not. Absent any factual support for assigning a maximum weight to Person's truck or the speed and weight of Shipley's vehicle, any ultimate conclusion reached by Dr. Turner based upon those assumptions is unreliable and based wholly upon speculation. Under the circumstances, we conclude that Dr. Turner's opinions were unreliable, no more than subjective belief or unsupported speculation. *See Armstrong,* 775 N.E.2d at 368.

■ We recognize that, as a general rule, the admissibility of expert testimony does not hinge on the expert's disclosure of the facts and reasoning that support his opinion. *Dorsett v. R.L. Carter, Inc.,* 702 N.E.2d 1126, 1128 (Ind. Ct.App.1998), *trans. denied* (1999).[4] That being said, we cannot have a record completely devoid of underlying facts to support an expert opinion yet permit an expert to engage in speculation and conjecture subject only to cross-examination. As the gatekeeper in the admission of

---

**3.** An expert may express his opinion regarding a hypothetical question if the proper foundation is laid, including a proper evidentiary foundation supporting the facts that are included in the hypothetical question. *Blaker v. Young,* 911 N.E.2d 648, 652 (Ind.Ct.App. 2009) (citing *Johnson v. State,* 699 N.E.2d 746 (Ind.Ct.App.1998)), *trans. denied* (2010).

**4.** Specifically, Indiana Evidence Rule 705 provides that an expert "may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

expert testimony, the trial court's proper function is to control the admission of such proffered expert testimony "rather than merely admitting whatever is offered and leaving it to the jury to determine what weight it should be given." *Norfolk Southern Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 101 (Ind.Ct.App. 2005) (citing *State Dep't of Transp. v. Hoffman*, 721 N.E.2d 356, 359 (Ind.Ct. App.1999)), *trans. denied* (2006). Moreover, because underlying factual support was lacking in Dr. Turner's calculations, this is not a case in which effective cross-examination could cure any credibility issues. This is purely a matter in which a reliable scientific method was used to test mere speculation. The trial court abused its discretion when it admitted Dr. Turner's testimony as to the change in velocity of Person's truck upon impact.

 It is well settled that a party contesting the admission of evidence "will not prevail on appeal unless a substantial right of the party is affected." *Bennett v. Richmond*, 932 N.E.2d 704, 707 (Ind. Ct.App.2010). However, "unlike garden variety rulings admitting or excluding evidence, Rule 702 determinations are more likely to have a direct impact on the ultimate trial court judgment or jury verdict and, hence, to 'affect the substantial rights of the parties.'" *Id.* (citations omitted). Our review of the record indicates that Dr. Turner's unreliable opinion as to the forces involved in the accident and the resultant momentum transfer upon impact was the basis for most, if not all, of the expert opinion to follow. His unreliable opinion as to the change in velocity of the truck was the basis for his own opinion that Person's alleged injuries were not likely caused by the accident as well as Dr. Lazoff's medical opinion that Person's injuries were not caused by the accident. Indeed, Dr. Lazoff explains in his testimony as well as his medical report that Dr. Turner's finding as to momentum transfer was considered of "utmost importance" in reaching his conclusion that Person's alleged injuries were not caused by the accident. Defendant's Ex. B. Accordingly, Dr. Turner's unreliable opinion tainted the remainder of the expert opinion that was allowed before the jury. Under the circumstances, Person was unfairly prejudiced by the trial court's admission of expert opinion testimony. Therefore, we reverse the verdict and remand for further proceedings consistent with this opinion.

Reversed and remanded.

NAJAM, J., and ROBB, C.J., concur.

### ORDER

On May 13, 2011, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish Not for Publication Memorandum Decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion to Publish is GRANTED and this Court's opinion heretofore handed down in this cause on May 13, 2011, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

ROBB, C.J. and NAJAM, CRONE, JJ., concur.