ATTORNEY FOR APPELLANT
Douglas A. Mulvaney
Elkhart, Indiana

ATTORNEY FOR APPELLEE
Deborah A. Kapitan
Crown Point, Indiana

## In the
## Indiana Supreme Court



FILED
Jan 31 2012, 11:39 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 20S03-1110-CT-609

REGINALD N. PERSON, JR.,

*Appellant (Plaintiff below)*,

v.

CAROL A. SHIPLEY,

*Appellee (Defendant below)*.

Appeal from the Elkhart Superior Court, No. 20D01-0411-CT-739
The Honorable Evan S. Roberts, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 20A03-1008-CT-463

**January 31, 2012**

**Sullivan, Justice.**

In <u>Bennett v. Richmond</u>, No. 20S03-1105-CV-293, ___ N.E.2d ___ (Ind. 2012), another case handed down today, we hold that the trial court did not abuse its discretion under Indiana Rule of Evidence 702 by admitting certain expert testimony that was offered by a personal injury plaintiff in a rear-end collision case. In this case, we hold that the same trial court similarly did not abuse its discretion by admitting expert testimony offered by a personal injury defendant in yet another rear-end collision case.

## Background

In November, 2002, Carol Shipley, while driving a Buick Park Avenue sedan, rear-ended Reginald Person's vehicle, an eighteen-wheel semi tractor-trailer – Shipley's sedan, to repeat, rear-ended Person's eighteen-wheeler. In November, 2004, Person sued Shipley for injuries to his neck and lower back that Person claimed he had sustained in the accident

Shipley retained two experts, Charles Turner, Ph.D., and Thomas Lazoff, M.D., in defense of Person's claim that the rear-ending accident caused his injuries. In his deposition, Dr. Turner opined that the change of speed or velocity of Person's truck upon the rear-ending impact was minimal, and as a result, that it was unlikely that the accident caused Person's lower-back injury. Dr. Lazoff similarly opined in his deposition that it was unlikely that the accident caused this injury. These opinions form the basis of this appeal.

Person filed motions to exclude the videotaped deposition testimony of both Dr. Turner and Dr. Lazoff prior to the jury trial; Shipley filed a motion to strike in response. Finding that Person's motions had been filed untimely, the trial court granted Shipley's motion to strike. Nevertheless, because Person had made contemporaneous objections during the depositions to the admissibility of the expert testimony, the trial court agreed to address admissibility during trial. Person then renewed his objections to portions of their testimony at trial, which the trial court overruled. The jury later returned a defense verdict in favor of Shipley and awarded no damages to Person.

Person appealed, contending that the trial court erred when it permitted Shipley's experts to testify that Person's lower-back injury was not likely caused by the rear-ending accident because the impact on Person's truck was minimal. The Court of Appeals agreed and reversed and remanded the case. Person v. Shipley, 949 N.E.2d 386, 394 (Ind. Ct. App. 2011).

Person sought, and we granted, transfer, Person v. Shipley, ___ N.E.2d ___ (Ind. 2011) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

**Discussion**

Person objected to Dr. Turner's testimony under Rule 702 on the basis that Dr. Turner was not qualified to offer an opinion on either accident reconstruction or the medical cause of injury, and even if he were qualified, that his opinions were unreliable because he did not have sufficient information necessary to give them. Related to this, Person argues that Dr. Lazoff's testimony should have been excluded by the trial court because it was based in part on Dr. Turner's unreliable testimony.

As we reiterate today in <u>Bennett</u>, the trial court is considered the gatekeeper for the admissibility of expert opinion evidence under Rule 702. <u>Doe v. Shults-Lewis Child & Family Servs., Inc.</u>, 718 N.E.2d 738, 750 (Ind. 1999). With regard to the admissibility of expert testimony, Rule 702 provides:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Ind. Evidence Rule 702.[1] Thus, Rule 702 guides the admission of expert scientific testimony by requiring that trial courts be satisfied that expert opinions both assist the trier of fact and are based on reliable principles. <u>Sears Roebuck & Co. v. Manuilov</u>, 742 N.E.2d 453, 460 (Ind. 2001) (plurality opinion). "A trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion and will be reversed only for

---

[1] We note that our Rule 702 differs from Federal Rule of Evidence 702, which provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702.

abuse of that discretion." TRW Vehicle Safety Sys., Inc. v. Moore, 936 N.E.2d 201, 216 (Ind. 2010) (citations omitted). We presume that the trial court's decision is correct, and the burden is on the party challenging the decision to persuade us that the trial court has abused its discretion. Id.

## I

With regard to Dr. Turner's qualifications, he received an undergraduate degree in Mechanical Engineering in 1983 and a Ph.D. in Biomedical Engineering in 1987.[2] He worked as an assistant professor at Creighton University School of Medicine from 1987-1991 and has taught courses at Purdue University and Indiana University-Purdue University Indianapolis since 1991. He is currently a professor of Orthopedic Surgery and Biomedical Engineering and teaches a course in biomechanics that covers the musculoskeletal system and the principles underlying the calculations he used in this case. Dr. Turner has been reviewing cases like the present one for twelve years.

Dr. Turner testified that he had reviewed the crash report in this case as well as some photographs of Shipley's vehicle, depositions, and a summary of Person's medical records. Dr. Turner explained that the important measurement in this case was that of momentum, the calculation for which is mass times velocity. He calculated the momentum transfer in this case to have been around 1.7-2.2 miles per hour, and he testified that this was a very small acceleration or change in velocity of Person's tractor-trailer. He further explained that a lower-back injury was unusual in this type of case because the lower back is supported by the seat, unlike the head and neck which are more commonly injured because they are not well supported even with some headrests. Based on this, Dr. Turner testified that it was more likely than not that the accident did not cause Person's lower-back injury.

We agree with the Court of Appeals that Dr. Turner was qualified under Rule 702(a) to offer his opinions. Person, 949 N.E.2d at 391-92. First, we too conclude that Dr. Turner's engi-

---

[2] In his deposition, Dr. Turner explained that his study of Biomedical Engineering "had to do mostly with the types of force it would take to break a bone or to injure a joint." Appellant's App. 119

neering background, his knowledge of velocity and changes in speed upon impact, and his experience in reviewing these types of cases made him qualified to offer his opinion as to the change in speed or velocity of Person's tractor-trailer. Id. at 391. And we agree that Dr. Turner was qualified to give his opinion that the accident did not cause Person's lower-back injury. Id. at 391-92. But we do take note of the basis for its finding that Dr. Turner was qualified in this latter regard. The Court of Appeals acknowledged that Dr. Turner was not a medical doctor and recounted the oft-cited statement that "[q]uestions of medical causation of a particular injury are questions of science dependent on the testimony of physicians and surgeons learned in such matters." Id. at 391 (citing Hannan v. Pest Control Servs., Inc., 734 N.E.2d 674, 679 (Ind. Ct. App. 2000), trans. denied). It reasoned, however, that Dr. Turner's testimony "focus[ed] on the science of engineering and physics as opposed to the science of medicine," id. at 391, and therefore, his education, background, training, and knowledge of the effect of forces on the musculoskeletal system made him qualified to render this causation opinion under Rule 702, id. at 391-92. The Court of Appeals has made a similar distinction in at least one other case. See K.D. v. Chambers, 951 N.E.2d 855, 861-62 (Ind. Ct. App. 2011) (noting that toxicologist's testimony related to the toxic effects of an overdose and whether those included a tremor, not to diagnosing or treating a disease), trans. denied, ___ N.E.2d ___ (Ind. 2011) (table), disapproved on other grounds by Spangler v. Bechtel, 958 N.E.2d 458, 466 n.5 (Ind. 2011). Although we find it unnecessary in this case to expound upon Dr. Turner's qualifications to offer an opinion on medical causation, we note here as we noted in Bennett that neither the criteria for qualifying under Rule 702 (knowledge, skill, experience, training, or education) nor the purpose for which expert testimony is admitted (to assist the trier of fact) seems to support disallowing an otherwise qualified expert to offer an opinion regarding medical causation simply because he or she lacks a medical degree.

We conclude that the trial court did not abuse its discretion in finding that Dr. Turner was qualified to offer his opinions.

## II

Admissibility under Rule 702 also depends on the reliability of the scientific principles Dr. Turner employed in forming his opinions. In making this determination, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." Shafer & Freeman Lakes Envtl. Conservation Corp. v. Stichnoth, 877 N.E.2d 475, 484 (Ind. Ct. App. 2007) (citation omitted), trans. denied.

As noted by the Court of Appeals, Person does not challenge the reliability of the scientific principles underlying Dr. Turner's calculation of momentum transfer. Person, 949 N.E.2d at 392. Rather, he argues that in making this calculation, Dr. Turner made assumptions that were without factual support. Accordingly, Person argues that Dr. Turner's testimony was unreliable and should have been excluded by the trial court.

Dr. Turner explained in his deposition that he made calculations based on the speed and weight of the vehicles in order to determine that the change in the velocity of Person's tractor-trailer upon impact was between 1.7-2.2 miles per hour. With regard to the speed of the vehicles, he concluded that Person's tractor-trailer was traveling at 55 miles per hour based on Person's own testimony. Further, based on photographs of Shipley's vehicle taken after the accident, Dr. Turner determined that the difference in the two vehicles' speeds was around 30 miles per hour and therefore that the speed of Shipley's vehicle was at least 85 miles per hour,[3] although he admitted that this was just an "educated guess" and that he was unable to "do a highly detailed analysis from these pictures."[4] Appellant's App. 124. As a result, he made calculations based on Shipley driving either 30 or 40 miles per hour faster than Person's tractor-trailer.

---

[3] Shipley testified that she knew the speed limit on the road was 65 miles per hour and that she always set her cruise control for a couple miles per hour below the posted limit. Appellant's App. 306.

[4] As noted, Dr. Turner based his determination of Shipley's speed solely on his review of post-accident photographs of Shipley's vehicle. He performed no other investigation. Although Person highlights this in his brief, he presents no legal argument challenging the reliability Dr. Turner's determination of speed based on his review of these photographs.

With regard to the weight of the vehicles, Dr. Turner concluded that Person was driving a semi tractor-trailer loaded with cargo for a combined weight of 80,000 pounds. He explained on cross-examination his reasoning for this figure:

> [Person] didn't recall the weight of the cargo, so I went to the – I reviewed typical cargo. And what – what we know is the Department of Transportation [("DOT")] sets a limit on gross weight in a tractor-trailer, and that limit is 80,000 pounds.
>
> Now, trucking companies like to be efficient and they typically like to run very close to their maximum weight when they're – when they're hauling cargo, because if they haul half of their maximum weight, they pay almost as much money, but they don't get as much profit from it. So my assumption was that it – that this trailer was loaded to maximum so that they would make the DOT maximum gross weight of 80,000 pounds.
>
> . . . .
>
> It's my assumption that they were trying to operate as efficiently as possible.

Id. at 134-36. He also explained on cross-examination that if the weight of Person's tractor-trailer was less than 80,000 pounds, then his momentum calculation would change: "[I]f the truck is lighter, it would have less – in this case it would be less inertia; in other words, it would be easier to push forward than if it's heavier." Id. at 135. He determined the weight of Shipley's Buick Park Avenue sedan to be between 3,000-4,000 pounds and explained that this figure was available from any number of sources that give gross weights for different vehicles.

The Court of Appeals held that "[a]bsent any factual support for assigning a maximum weight to Person's truck or the speed and weight of Shipley's vehicle, any ultimate conclusion reached by Dr. Turner based upon those assumptions is unreliable and based wholly upon speculation." Person, 949 N.E.2d at 393. But Rule 702 does not require such specific factual support for expert testimony. Rather, it only requires the trial court's satisfaction that the expert's opinion is based on reliable scientific principles that can be properly applied to the facts in issue. Stichnoth, 877 N.E.2d at 484. The facts in this case clearly support Dr. Turner's momentum calculation: Shipley, who was driving a sedan, fell asleep at the wheel and, not knowing exactly how fast she was driving at the time, rear ended an eighteen-wheel semi tractor-trailer that was traveling about 55 miles per hour and hauling bananas. Thus, Dr. Turner squarely applied a reli-

able scientific method – calculating the momentum transfer as mass times velocity – to facts that occurred in this case – a sedan rear ending a semi tractor-trailer.[5] Cf. Clarke v. Sporre, 777 N.E.2d 1166, 1170-71 (Ind. Ct. App. 2002) (expert opinion that hypoxic event caused mental impairment was speculative because there was no factual basis that hypoxic event occurred). To the extent Dr. Turner used his knowledge and experience to make reasonable estimates of speed and weight upon which to base his opinion, we note that this is, in fact, the purpose of an expert. Estate of Hunt v. Henry County Bd. of Comm'rs, 526 N.E.2d 1230, 1234 (Ind. Ct. App. 1988), trans. denied.

The Court of Appeals also concluded that "because underlying factual support was lacking in Dr. Turner's calculations, this is not a case in which effective cross-examination could cure any credibility issues." Person, 949 N.E.2d at 394. Again, we disagree. As we just explained, Dr. Turner applied a reliable scientific method squarely to the facts of this case. As for his inability to testify to the exact weights or speeds of the vehicles, the trial court itself aptly concluded: "that's cross-examination stuff, that's not exclusion stuff." Appellant's App. 84. Once the admissibility of Dr. Turner's testimony was established under Rule 702, "then the accuracy, consistency, and credibility of [his] opinions [were properly left] to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." Sears Roebuck, 742 N.E.2d at 461 (citation omitted). Moreover, we recently explained in that "[c]ross-examination permits the opposing party to expose dissimilarities between the actual evidence and the scientific theory. The dissimilarities go to the weight rather than to the admissibility of the evidence." Turner v. State, 953 N.E.2d 1039, 1051 (Ind. 2011) (citation omitted); see also West v. State, 755 N.E.2d 173, 181 (Ind. 2001) (noting that any discrepancy in actual shoe size and an expert's estimate of shoe size goes to weight and not admissibility). As

---

[5] We note that of particular concern to the Court of Appeals was Dr. Turner's assigning the maximum weight to Person's tractor-trailer. See Person, 949 N.E.2d at 393 (stating that this was "not just some insignificant detail to Dr. Turner's conclusion as to the change in velocity of the truck upon impact"). But Dr. Turner did not develop this 80,000 pound figure out of whole cloth. It is undisputed that Person's vehicle was an eighteen-wheel semi tractor-trailer that was in fact hauling a load of bananas, whether full or partial. In other words, Dr. Turner did not assign a weight of 80,000 to a tractor-trailer hauling no cargo, nor did he conclude that it weighed more than the maximum allowed by the DOT. His reasoning for assigning a weight of 80,000 pounds to Person's tractor-trailer demonstrates that this figure was not based on speculation. And Person, the party in the best position to know the actual weight of the truck he was driving, did not offer any evidence to contradict Dr. Turner's assumption.

applied to this case, once reliability was established, the dissimilarities between the actual weights and speeds of the vehicles, whether known or unknown, and the weights and speeds that Dr. Turner utilized in forming his opinion go to the weight and credibility of his testimony, not to its admissibility.

We conclude that the trial court did not abuse its discretion in finding that Dr. Turner's opinions were based on reliable scientific principles that could be applied to the facts at issue. And, because we conclude that Dr. Turner's testimony was properly admitted, we reject Shipley's argument that Dr. Lazoff's causation opinion should have been excluded by the trial court because it was based in part on Dr. Turner's calculation of momentum transfer.

**Conclusion**

Again, mindful that the trial court judge is afforded broad discretion in these matters, we decline to find any abuse of it. The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Rucker, and David, JJ., concur.