**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DAVID B. WILSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
STEPHEN BUENNAGEL:

**THOMAS R. SCHULTZ**
**BRANDON M. KIMURA**
Schultz & Pogue, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
ALLSTATE INSURANCE CO.:

**LINDA Y. HAMMEL**
Yarling & Robinson
Indianapolis, Indiana



FILED
Apr 15 2013, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN ROBERTS, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | )  No. 41A01-1206-CT-257 |
| | ) |
| STEPHEN BUENNAGEL and, | ) |
| ALLSTATE INSURANCE COMPANY, | ) |
| | ) |
| Appellees-Defendants. | ) |
| | ) |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Lance D. Hamner, Judge
Cause No. 41D03-1005-CT-37

**April 15, 2013**

**VAIDIK, Judge**

## Case Summary

John Roberts appeals the trial court's denial of his motion to correct errors following a jury verdict in favor of Stephen Buennagel and Allstate Insurance Company on his negligence complaint stemming from a car accident. He contends that the trial court abused its discretion in admitting the video deposition of the defense's expert witness into evidence. He argues that the expert witness was not properly qualified to give an expert opinion and that his opinions were unreliable because they were not based on studies that have been generally accepted within the scientific community. Finding that the expert witness was qualified to give an opinion on the issues and his opinions were sufficiently reliable, we affirm.

## Facts and Procedural History

In 1997, Roberts was diagnosed with a Chiari malformation at the base of his brain.[1] In January 1998, Dr. Mitesh Shah, M.D., performed surgery to relieve the symptoms that Roberts was experiencing as a result of the malformation. During the surgery, Dr. Shah removed bone from the base of Roberts' skull and cervical spine to alleviate the pressure on his cerebellum and spinal cord. In August 1998, Roberts began seeing Dr. Robert Pascuzzi, M.D., who was also a professor and Chairman of the Indiana University Department of Neurology. Dr. Pascuzzi treated Roberts from 1998 to 2007

---

[1] A Chiari malformation is "a disorder in which a part of the brain, specifically the lower part of the cerebellum, which is the coordination center of the brain, is positioned too low through the base of the skull." Appellant's App. p. 312.

for various symptoms, including dizziness, fatigue, sleep problems, and chronic musculoskeletal pain. In July 2006 and 2007, Dr. Pascuzzi ordered MRIs of Roberts' cervical spine, and both showed a bulging and degenerated disc in his cervical spine at C5-C6. In September 2008, Dr. Pascuzzi referred Roberts to a pain-management specialist for treatment of his chronic pain.

On December 11, 2008, Roberts was driving his 1988 Oldsmobile '88 westbound on Tracy Road and stopped at the stop sign at State Road 135 in Johnson County. Stephen Buennagel was in front of Roberts in a 2005 GMC pickup truck. Roberts stayed at a complete stop, but Buennagel reversed his truck because he felt he was too far out into the intersection, and backed into the front of Roberts' car. Buennagel did not step on the gas pedal at all. Tr. p. 29. Buennagel then pulled forward and stopped. Both Buennagel and Roberts got out of their cars and exchanged information. Roberts did not have "any great movement within the vehicle," and no police or ambulance were called. Appellant's App. p. 450-51. After the two exchanged information, Roberts left to pick up his children and did not seek immediate medical attention. Buennagel's car insurance company paid $410.17 for the repair of Roberts' car, only $186.58 of which was for parts. Buennagel's car was not damaged.

The following day, Roberts sought treatment from Dr. Shawn Chen, M.D., for treatment of numbness and increased neck stiffness. Roberts reported that it was difficult for him to hold his head up, and Dr. Chen instructed him to follow up with Dr. Pascuzzi. Roberts saw Dr. Pascuzzi on December 31, 2008. Dr. Pascuzzi's impression was that Roberts had suffered a whiplash-type injury during the car accident, and he ordered a

3

cervical spine MRI. The results of the MRI showed a herniated disc at C5-C6 that was compressing the spinal cord. Dr. Pascuzzi referred Roberts to Dr. Shah who performed cervical fusion surgery on February 5, 2009. During surgery, Dr. Shah removed a large free fragment of disc material, but he was unable to state precisely when the disc fragment appeared.

Roberts filed a complaint against Buennagel in Johnson Circuit Court, seeking damages for his "medical and hospital expenses, disability, impairment, disfigurement, and pain and suffering." *Id.* at 16 (formatting altered). A jury trial was held, and both sides retained expert witnesses to testify as to the cause of Roberts' herniated disc.

Roberts' expert witnesses were Dr. Shah and Dr. Pascuzzi, his treating neurosurgeon and neurologist, respectively. At trial, the video depositions of both doctors were admitted into evidence. Dr. Shah, who has practiced neurosurgery for seventeen years, stated that the amount of force required to herniate Roberts' degenerated disc would have been less than for an individual with a healthy disc. He further said that "I think it's a possibility that [the car accident and the disc herniation are] causally related; but it is part of a spectrum of continuum of deterioration of the disc was ongoing over a period of almost 15, 10 years." *Id.* at 262. Dr. Pascuzzi, a board-certified neurologist who has taught and practiced for twenty-eight years, stated that in his opinion, Roberts' disc herniation was "likely to be related to his automobile accident." Plaintiff's Ex. 17.

Buennagel's expert witness was Dr. David Porta, Ph.D., a professor of anatomy at Bellarmine University. Dr. Porta received his Ph.D. from the University of Louisville

Medical School Department of Anatomical Sciences and Neurobiology, but he does not hold a medical degree. In addition to teaching, Dr. Porta also performs academic research that is mostly focused on the biomechanics and the effects on the human anatomy caused by car accidents. Appellant's App. p. 427-29. He has written eighteen peer-reviewed publications and authored several book chapters concerning injuries from automobile accidents. He has also testified as an expert witness in forty-eight cases.

Dr. Porta's testimony contained two major conclusions: (1) Buennagel's vehicle was traveling at less than five miles per hour when it struck Roberts' vehicle and (2) it is not expected that the impact from the accident would cause Roberts' herniated disc. *Id.* at 473. Dr. Porta based his conclusions on photographs of the vehicles, the repair estimate for Buennagel's vehicle, Roberts' medical records, the depositions of Dr. Shah and Dr. Pascuzzi, and other secondary materials. Roberts challenged the admission into evidence of Dr. Porta's testimony both by filing a pre-trial motion and by objecting at trial. The trial court denied the pre-trial motion after a hearing and overruled Roberts' objection at trial, allowing Dr. Porta's video deposition into evidence.

The jury returned a verdict in favor of Buennagel. Roberts filed a motion to correct errors that the trial court denied. Roberts now appeals.

**Discussion and Decision**

Roberts argues that the trial court abused its discretion in allowing Dr. Porta's expert opinion into evidence because: (1) Dr. Porta was not qualified to offer an opinion as an expert on the issues and (2) Dr. Porta's opinions were unreliable because they were not based on studies that have been generally accepted within the scientific community.

5

Indiana Evidence Rule 702 governs expert testimony and states:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Whether to admit expert testimony is a matter for the trial court's discretion, and the trial court's ruling "will be reversed only for abuse of that discretion. We presume that the trial court's decision is correct, and the burden is on the party challenging the decision to persuade us that the trial court has abused its discretion." *Bennett v. Richmond*, 960 N.E.2d 782, 786 (Ind. 2012) (internal citation omitted).

## I. Admission of Dr. Porta's Testimony

### A. *Qualification*

Roberts first argues that Dr. Porta was not qualified to offer his expert opinion on the issues, contending that Dr. Porta did not possess any of the relevant characteristics under Rule 702 in regards to his opinion concerning the speed of the vehicles in the accident and the biomechanics and medical causation of Roberts' injury. We disagree.

We first note that Dr. Porta is not per se disqualified as an expert in terms of Roberts' injury because he does not have a medical degree. "[N]either the criteria for qualifying under Rule 702 . . . nor the purpose for which expert testimony is admitted . . . seems to support disallowing an otherwise qualified expert to offer an opinion regarding medical causation simply because he or she lacks a medical degree." *Person v. Shipley*, 962 N.E.2d 1192, 1196 (Ind. 2012).

6

A witness is qualified as an expert "by knowledge, skill, experience, training, or education," Ind. Evidence R. 702(a), and only one of these characteristics is necessary. *Bennett*, 960 N.E.2d at 789. Dr. Porta has a Ph.D. from the University of Louisville Medical School, Department of Anatomical Sciences & Neurobiology. He has conducted extensive academic research that is mostly focused on the biomechanics and the effects *on the human anatomy* caused by car accidents. Appellant's App. p. 427-29. He has given guest lectures in the areas of accident reconstruction, crash-testing, engineering, anatomy, and medicine. He also has taught at multiple universities, synthesizing the disciplines of anatomy, medicine, and engineering as related to automobile-accident injuries, and written a chapter about the cervical spine that was published by the Society of Automotive Engineers. *Id.* at 430-36.

We are confident that this amount of education, research, and familiarity with automobile accidents constitutes sufficient knowledge and experience to qualify Dr. Porta as an expert on the issues both of the speed of Buennagel's vehicle at the time of the accident and Roberts' injury.

## *B. Reliability*

Roberts also contends that Dr. Porta's opinions were unreliable because they were not based on studies that have been generally accepted within the scientific community. We disagree.

In order to determine the admissibility of expert testimony under Rule 702, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology

properly can be applied to the facts in issue." *Bennett*, 960 N.E.2d at 791 (quoting *Shafer & Freeman Lakes Envtl. Conservation Corp. v. Stichnoth*, 877 N.E.2d 475, 484 (Ind. Ct. App. 2007), *trans. denied*). While there are relevant factors to consider, "[t]here is no specific test or set of factors which must be considered in order to satisfy Evidence Rule 702." *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 679-80 (Ind. Ct. App. 2000), *trans. denied*.

In his deposition, Dr. Porta testified to the circumstances surrounding the accident. In determining the speed of the vehicles at the time of impact, he discussed four ways in which the change in velocity – Delta V – can be calculated. Appellant's App. p. 470-71. Of those four ways, he testified that only one was relevant in the present case, and that was measuring the amount of crush. *Id.* at 471. Since he did not have access to the vehicles, he used the photographs and damage estimates to reach his conclusion that Buennagel's vehicle was traveling at less than five miles per hour when it struck Roberts' vehicle. *Id.* at 472-73. This particular method Dr. Porta used to reach his conclusion – calculating Delta V from the photographs of the accident – has previously been held to be sufficiently reliable. *See Person*, 962 N.E.2d at 1196; *Suell*, 780 N.E.2d at 872.

As for whether the accident was the cause of Roberts' injury, Dr. Porta testified that he did not expect such an automobile accident to cause a herniated cervical disc. Appellant's App. p. 473. He did not testify as to the precise cause of the injury, as that would require medical testimony. *See id.* at 473-77. Rather, Dr. Porta relied upon his past experience, his own research of automobile-accident injuries, and other research he

reviewed that included volunteer studies in rendering his opinion.[2] Dr. Porta's expert opinion as to Roberts' injury was therefore based upon his experience with automobile accidents and accident reconstruction.

When expert testimony is based upon skill or experience rather than on a specific scientific principle,

> the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of lay persons and that the witness possesses sufficient skill, knowledge or experience in the field to assist the trier of fact to understand the evidence or determine a fact in issue.

*Norfolk S. Ry. v. Estate of Wagers*, 833 N.E.2d 93, 102 (Ind. Ct. App. 2005), *trans. denied*. Roberts himself argues that the cause of his injury is a field beyond the knowledge of a lay person, Appellant's Br. p. 24-30, and as discussed above, Dr. Porta has sufficient knowledge and experience to testify to this particular information. Roberts' arguments are therefore merely an attempt for us to revisit the weight given to Dr. Porta's testimony, which we will not do. Our Supreme Court noted that cross-examination is the time to "expose dissimilarities between the actual evidence and the scientific theory," and that any dissimilarity "go[es] to the weight rather than to the admissibility of the evidence." *Person*, 962 N.E.2d at 1198. We therefore find that Dr. Porta's opinions were properly admitted into evidence.

---

[2] Volunteer studies have been rejected in other jurisdictions as a basis for an expert opinion due to small sample sizes and test circumstances that are not substantially similar enough to those involved in real accidents. *See Stedman v. Cooper*, 292 P.3d 764, 768 (Wash. Ct. App. 2012); *Tittsworth v. Robinson*, 475 S.E.2d 261, 263-64 (Va. 1996). However, in this case the studies provided only a portion of the basis Dr. Porta used to form his opinion as to the cause of Roberts' injury; he also relied on medical records, damage estimates, depositions, and photographs of the vehicles to reach his conclusion. *See* Appellant's App. p. 439. We therefore find the concerns about volunteer studies expressed in other jurisdictions to be less pressing in this case, and we do not reject Dr. Porta's opinion due to his use of such studies.

9

The trial court did not err in admitting Dr. Porta's video deposition into evidence.

## II. Harmless Error

Even if Dr. Porta's deposition were erroneously admitted into evidence, we find that any error would be harmless. If a trial court errs in excluding evidence, we will not find reversible error where that error is harmless; that is, where the error did not affect the substantial rights of a party. Ind. Trial Rule 61; *Appleton v. State*, 740 N.E.2d 122, 126 (Ind. 2001).

In this case, additional independent evidence was presented at trial that duplicated Dr. Porta's testimony. The photographs of the vehicles, Pl. Ex. 1, damage estimates, Pl. Ex. 6-7, and testimony of an auto property damage estimator concerning the amount of damage done to the vehicles, Tr. p. 3-11, in addition to Dr. Shah's testimony about both his uncertainty of the cause of Roberts' herniated disc and that the herniated disc was not the main reason for recommending Roberts' cervical fusion surgery, Appellant's App. p. 250-52, 262-63, were duplicative of the opinions presented by Dr. Porta. All of that additional evidence also suggests that a low-speed automobile accident was unlikely to result in a herniated cervical disc. We therefore find that even if Dr. Porta's testimony were admitted by error, that error would be harmless.

Affirmed.

BAILEY, J., and BROWN, J., concur.